## BUILDING SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 262, ET AL. *v.* GAZZAM.

No. 449.   Argued February 9, 1950.—Decided May 8, 1950.

*Daniel D. Carmell* and *Walter F. Dodd* argued the cause and filed a brief for petitioners.

*Alfred J. Schweppe* argued the cause and filed a brief for respondent.

Mr. Justice Minton delivered the opinion of the Court.

It is the public policy of the State of Washington that employers shall not coerce their employees' choice of representatives for purposes of collective bargaining. Do the First and Fourteenth Amendments to the Federal Constitution permit the State, in reliance on this policy, to enjoin peaceful picketing carried on for the purpose of compelling an employer to sign a contract with a labor union which coerces his employees' choice of bargaining representative?

The State answered in the affirmative. An injunction was issued in narrow terms enjoining petitioners "from endeavoring to compel plaintiff to coerce his employees to join the defendant union or to designate defendant union as their representative for collective bargaining, by picketing the hotel premises of plaintiff . . . ." The Supreme Court of Washington affirmed, 34 Wash. 2d 38, 207 P. 2d 699, and we granted certiorari. 338 U. S. 903.

At the time of the controversy, respondent employed about fifteen persons at Enetai Inn, a small hotel which he operates in Bremerton, Washington. Just prior to May 1, 1946, representatives of the petitioner union called upon respondent about organizing his employees and asked him to sign a contract with the union which would require his employees to join the union. None of the employees was a member of any union active in the area. Respondent replied that that was a matter for the employees to decide. He gave the union and its representatives permission freely to visit and solicit his employees for membership while he was absent on a brief trip to Los Angeles. Upon his return, the union representatives again approached him about signing a contract. The representatives admitted that they had not

secured any members among the employees, and respondent again replied that it was a matter for the employees. On May 2, 1946, respondent was advised that the union proposed to have the Enetai Inn placed on the "We Do Not Patronize" list, and a meeting for the purpose of attempting to reach a settlement was suggested. At the meeting held a few days later respondent was represented by his attorney. The union still insisted that respondent sign the contract, and respondent through his attorney still declined to sign on the ground that that would require him to coerce his employees to join a union, contrary to state law.

The union asked for and was granted a meeting with respondent's employees at which the union representatives might present their case. Six representatives of organized labor attended this meeting, held on May 10, 1946. Eleven of the employees attended. One was a bellboy whose work the union apparently did not wish to have covered. Respondent was again represented by his attorney. The union representatives were given complete and unhampered opportunity to present their arguments for unionization to the employees. No statement was made by anyone on behalf of respondent or the employees. After the union representatives had completed their presentation, all withdrew except the employees who then took a vote as to whether they wished to join the union. Of the eleven voting, nine voted against joining, one was undecided, and the bellboy, whose membership the union did not desire, voted to join. The result was immediately reported to the union representatives and to respondent's attorney. Several days later respondent was notified that his hotel had been placed on the "We Do Not Patronize" list and pickets began walking in front of his hotel bearing a sign reading: "Enetai Inn—Unfair to Organized Labor." The picket-

ing was carried on by a single picket at a time and was intermittent and peaceful.

With the exception of refusing to sign the contract requiring his employees to join the union, respondent had complied with all of the requests and demands of the union. That single refusal was what caused the union to brand respondent's place of business as unfair. After the picketing started, respondent's attorney agreed to talk to respondent again to see if he would consider signing the contract. After consulting with respondent, the attorney wrote the union's attorney that respondent was willing to negotiate further with the union but would not sign the type of contract that had been tendered him. The union then offered a contract which provided that present employees should not be required to join the union as a condition of continued employment, but that any employees hired in the future would be required to join within fifteen days or be discharged. The new contract also provided that the union should be the bargaining representative for both union and nonunion employees. The second contract was just the first contract in slow motion. Respondent refused to sign it for the same reason he had refused to sign the previously tendered contract.

The peaceful picketing continued, and on June 29, 1946, respondent filed this suit for an injunction and damages. On the first hearing the trial court granted petitioners' motion for a nonsuit and dismissed the complaint. The Supreme Court of Washington reversed on appeal. 29 Wash. 2d 488, 188 P. 2d 97. Upon remand the trial court on September 20, 1948, entered judgment for respondent for damages for the "wrongful picketing" in the sum of $500 and permanently enjoined petitioners in the previously quoted language. This judgment the Supreme Court of Washington affirmed on July 1, 1949, by a divided court. 34 Wash. 2d 38, 207 P. 2d 699.

The State of Washington has what is sometimes referred to as a "Little Norris-LaGuardia Act,"[1] which provides that no injunction shall issue in a "labor dispute," as defined in the Act, except in conformity with the provisions of the Act; nor shall any injunction issue contrary to the public policy declared in the Act. No "labor dispute" as determined by the law of Washington was held to exist in this case. There was no injunction against picketing generally. It was held that the objective of the picketing was violative of the public policy against employer coercion of employees' choice of bargaining representative, and that the picketing should be enjoined on that narrow ground.[2]

Does the injunction, limited as it is to restraining petitioners from picketing respondent's hotel for the purpose of compelling him to coerce his employees' choice of bargaining representative, constitute an abridgment of the right of free speech under the First and Fourteenth Amendments?

This Court has said that picketing is in part an exercise of the right of free speech guaranteed by the Federal Con-

---

[1] Washington Labor Disputes Act, Rem. Rev. Stat. (Supp. 1940) § 7612. Certain sections of this Act were held unconstitutional by the Washington Court in *Blanchard* v. *Golden Age Brewing Company*, 188 Wash. 396, 63 P. 2d 397.

[2] The Washington Supreme Court reviewed its decisions in this field in its first opinion in the instant case. *O'Neil* v. *Building Service Employees Union*, 9 Wash. 2d 507, 115 P. 2d 662, and *S & W Fine Foods* v. *Retail Delivery Drivers and Salesmen's Union*, 11 Wash. 2d 262, 118 P. 2d 962, had treated any peaceful picketing as lawful. *American Federation of Labor* v. *Swing*, 312 U. S. 321, was held to be controlling in both cases. But in the instant case, both the *O'Neil* and *S & W* cases were characterized as wrong in principle and were expressly overruled. The court quoted from *Swenson* v. *Seattle Central Labor Council*, 27 Wash. 2d 193, 206, 177 P. 2d 873, 880, where it was said that peaceful picketing is an exercise of the right of free speech which loses the protection of constitutional guaranty where "it steps over the line from persuasion to coercion."

stitution. *Cafeteria Employees Union* v. *Angelos,* 320 U. S. 293; *Bakery & Pastry Drivers & Helpers Local* v. *Wohl,* 315 U. S. 769; *American Federation of Labor* v. *Swing,* 312 U. S. 321; *Carlson* v. *California,* 310 U. S. 106; *Thornhill* v. *Alabama,* 310 U. S. 88; *Senn* v. *Tile Layers Union,* 301 U. S. 468. But since picketing is more than speech and establishes a *locus in quo* that has far more potential for inducing action or nonaction than the message the pickets convey, this Court has not hesitated to uphold a state's restraint of acts and conduct which are an abuse of the right to picket rather than a means of peaceful and truthful publicity. Thus in *Milk Wagon Drivers Union* v. *Meadowmoor Dairies,* 312 U. S. 287, the picketing in issue, considered in isolation, was peaceful, but had been found to be enmeshed with and set in such a background of violence that it was a part of a pattern of violence. This Court held that peaceful picketing under such circumstances might properly be enjoined by the State.

In *Hotel & Restaurant Employees' International Alliance* v. *Wisconsin E. R. B.,* 315 U. S. 437, this Court upheld the right of Wisconsin through its Employment Relations Board to issue a cease and desist order against violence in picketing and boycotting by the union involved. *Carpenters & Joiners Union* v. *Ritter's Cafe,* 315 U. S. 722, upheld a decree enjoining the union from picketing a cafe having no business connection with the place where the industrial dispute centered. And in *Giboney* v. *Empire Storage & Ice Co.,* 336 U. S. 490, the Court sustained a decree enjoining picketing which was peaceful and informative but was carried on for the purpose of coercing the employer to violate the antitrust law of Missouri.

The public policy of any state is to be found in its constitution, acts of the legislature, and decisions of its courts. "Primarily it is for the lawmakers to determine

the public policy of the State." *Twin City Pipe Line Company* v. *Harding Glass Company,* 283 U. S. 353, 357.

The State of Washington has by legislative enactment declared its public policy on the subject of organization of workers for bargaining purposes. The pertinent part of this statute is set forth in the margin.[3] The meaning and effect of this declaration of policy is found in its application by the highest court of the State to the concrete facts of the instant case. Under the so-enunciated public policy of Washington, it is clear that workers shall be free to join or not to join a union, and that they shall be free from the coercion, interference, or restraint of *employers of labor* in the designation of their representatives for collective bargaining. Picketing of an employer to compel him to coerce his employees' choice

---

[3] "In the interpretation of this act and in determining the jurisdiction and authority of the courts of the State of Washington, as such jurisdiction and authority are herein defined and limited, the public policy of the State of Washington is hereby declared as follows:

"Whereas, Under prevailing economic conditions, developed with the aid of governmental authority for owners of property to organize in the corporate and other forms of ownership association, the individual unorganized worker is commonly helpless to exercise actual liberty of contract and to protect his freedom of labor, and thereby to obtain acceptable terms and conditions of employment, wherefore, though he should be free to decline to associate with his fellows, it is necessary that he have full freedom of association, self-organization, and designation of representatives of his own choosing, to negotiate the terms and conditions of his employment, and that he shall be free from interference, restraint, or coercion of employers of labor, or their agents, in the designation of such representatives or in self-organization or in other concerted activities for the purpose of collective bargaining or other mutual aid or protections; therefore, the following definitions of, and limitations upon, the jurisdiction and authority of the courts of the State of Washington are hereby enacted." Rem. Rev. Stat. (Supp. 1940) § 7612–2.

of a bargaining representative is an attempt to induce a transgression of this policy, and the State here restrained the advocates of such transgression from further action with like aim. To judge the wisdom of such policy is not for us; ours is but to determine whether a restraint of picketing in reliance on the policy is an unwarranted encroachment upon rights protected from state abridgment by the Fourteenth Amendment.

Petitioners insist that the *Swing* case, *supra,* is controlling. We think not. In that case this Court struck down the State's restraint of picketing based solely on the absence of an employer-employee relationship. An adequate basis for the instant decree is the unlawful objective of the picketing, namely, coercion by the employer of the employees' selection of a bargaining representative. Peaceful picketing for any lawful purpose is not prohibited by the decree under review. The State has not here, as in *Swing,* relied on the absence of an employer-employee relationship. Thus the State has not, as was the case there, excluded "workingmen from peacefully exercising the right of free communication by drawing the circle of economic competition between employers and workers so small as to contain only an employer and those directly employed by him." 312 U. S. at 326.

The Washington statute has not been construed by the Washington courts in this case to prohibit picketing of workers by other workers. The construction of the statute which we are reviewing only prohibits coercion of workers by employers. We cannot agree with petitioners' reading of this injunction that "whatever types of picketing were to be carried out by the union would be in violation of the decree." Respondent does not contend that picketing *per se* has been enjoined but only that picketing which has as its purpose violation of the policy of the State. There is no contention that picketing

directed at employees for organization purposes would be violative of that policy. The decree does not have that effect.

We are of the opinion that *Giboney* v. *Empire Storage & Ice Co.*, 336 U. S. 490, controls the disposition of this case, and that it therefore must be affirmed. In the *Giboney* case it is true that the state law which made the objective of the picketing unlawful had criminal sanctions. The Washington statute here has no criminal sanctions. Petitioners seek to distinguish *Giboney* on that ground. This Court there said: "But placards used as an essential and inseparable part of a grave offense against an important public law cannot immunize that unlawful conduct from state control. . . . And it is clear that appellants were doing more than exercising a right of free speech or press. . . . They were exercising their economic power together with that of their allies to compel Empire to abide by union rather than by state regulation of trade." 336 U. S. at 502–503. It is not the presence of criminal sanctions which makes a state policy "important public law." Much public policy does not readily lend itself to accompanying criminal sanctions. Whether to impose criminal sanctions in connection with a given policy is itself a question of policy.

Here, as in *Giboney,* the union was using its economic power with that of its allies to compel respondent to abide by union policy rather than by the declared policy of the State. That state policy guarantees workers free choice of representatives for bargaining purposes. If respondent had complied with petitioners' demands and had signed one of the tendered contracts and lived up to its terms, he would have thereby coerced his employees. The employees would have had no free choice as to whether they wished to organize or what union would be their representative.

The public policy of Washington relied upon by the courts below to sustain this injunction is an important and widely accepted one. The broad purpose of the Act from which this policy flows was to prevent unreasonable judicial interference with legitimate objectives of workers. But abuse by workers or organizations of workers of the declared public policy of such an Act is no more to be condoned than violation of prohibitions against judicial interference with certain activities of workers. We therefore find no unwarranted restraint of picketing here. The injunction granted was tailored to prevent a specific violation of an important state law. The decree was limited to the wrong being perpetrated, namely, "an abusive exercise of the right to picket." *Cafeteria Employees Union* v. *Angelos,* 320 U. S. at 295. The judgment is

*Affirmed.*

MR. JUSTICE BLACK is of the opinion that this case is controlled by the principles announced in *Giboney* v. *Empire Storage. & Ice Co.,* 336 U. S. 490, and therefore concurs in the Court's judgment.

MR. JUSTICE DOUGLAS took no part in the consideration or decision of this case.