HAROLD J. JENSEN, D.B.A. "LAKE STREET PHAR-MACY," DONNA OLDHAM, MARJORIE REY-NOLDS, GERALDINE ROEBUCK, FLORENCE HATCH AND MARY SCOTT, APPELLANTS, v. RENO CENTRAL TRADES AND LABOR COUNCIL, A LABOR UNION, A. E. CAUBLE, LOUIS PALEY, NATHAN JEBB, CULINARY AND HOTEL SERVICE WORKERS' LOCAL NO. 45, A LABOR UNION, WILLIAM O. ROYALTY, HARRY VIE-THEER, SANFORD CARTER, TEAMSTERS, CHAUFFEURS AND WAREHOUSEMEN LOCAL NO. 533, A LABOR UNION, J. GEYER, GEORGE MASKALY, R. A. ANDERSON, ED SHAW, GEORGE BERTRAND, AND W. A. DAVIDSON, RESPONDENTS.

No. 3638

April 13, 1951. 229 P.2d 908.

*Ernest S. Brown,* of Reno, for Appellants.

*McCarran & Wedge,* of Reno, *Gilbert, Nissen & Irvin,* of Los Angeles, and *James F. Galliano,* of Oakland, for Respondents.

## OPINION

By the Court, MERRILL, J.:

This is an appeal from judgment of the trial court dismissing the action of plaintiffs below (upon sustaining

defendants' demurrer to plaintiffs' amended complaint) and from orders denying plaintiffs' motion for temporary injunction and dissolving a restraining order theretofore issued on behalf of plaintiffs. The question involved is defendants' right peacefully to picket an establishment for the purpose of securing a closed shop contract with the proprietor against the desire of his employees.

At the outset, we deem it wise to delineate the scope of this opinion. This court has heretofore held in State ex rel. Culinary Workers, Local No. 226 v. Eighth Judicial District Court, 66 Nev. 166, 207 P.2d 990, 996, and on petition for rehearing in 66 Nev. 202, 210 P.2d 454, that such picketing was lawful. (That case involved the White Cross Drug Company of Las Vegas and for convenience will be referred to in this opinion as the White Cross Drug case.) It is contended by appellants that that decision is not controlling in the matter before us and this is the question to which we must address ourselves in this opinion. Since submission of this matter to this court the legislature of the State of Nevada has amended the act which was the principal point of discussion in the White Cross Drug case; and that opinion has, thus, to the effective extent of that legislation, been superseded by legislative act.[1] In this opinion, therefore, we are confined in our

---

[1]Sec. 10473, N.C.L.1929, prior to the 1951 amendment, read as follows: "It shall be unlawful for any person, firm or corporation to make or enter into any agreement, either oral or in writing, by the terms of which any employee of such person, firm or corporation, or any person about to enter the employ of such person, firm or corporation, as a condition for continuing or obtaining such employment, shall promise or agree not to become or continue a member of a labor organization, or shall promise or agree to become or continue a member of a labor organization."

In the White Cross Drug case the term "labor organization" (as last used in the section above) was construed to mean "company union" and not to include independent unions. It was thus held that the prohibition of the statute was against so-called "yellow-dog contracts" and did not preclude collective security agreements or closed shop contracts.

Sec. 10473 N. C. L., as amended by act approved March 14, 1951, reads as follows: "It shall be unlawful for any person, firm or

determinations to the state of the law prior to that enactment. In no wise can this opinion be regarded as establishing the law of this state under the new statute.

First, then, as to the facts: Appellants were plaintiffs below. Appellant Jensen is proprietor of the Lake Street Pharmacy in Reno. The remaining appellants are his employees. Respondents are labor unions and union officials. On May 9, 1950, this suit was brought to secure an injunction against picketing and boycotting of the Lake Street Pharmacy and for $40,000 damages sustained by such activities.

This appeal comes to us on a demurrer to the amended complaint of plaintiffs and in our analysis of the factual situation before us, we are thus confined to the allegations there made. The allegations are not overly helpful, being extremely general in terms and dealing largely in ultimate facts or conclusions. Specific acts and occurrences, which were available to us through testimony in the White Cross Drug case, are largely absent in the case at bar.

It appears, however, that appellant employees are not members of any union or labor organization and have no desire to join any such organization; that there is no dispute between the employees and their employer, Appellant Jensen; that defendants, desiring unionization of the employees, demanded of Jensen execution of a closed shop contract; that upon his refusal, defendants on Nov. 29, 1949, established a picket line and boycott of the establishment.

corporation to make or enter into any agreement, either oral or in writing, by the terms of which any employee of such person, firm or corporation, or any person about to enter the employ of such person, firm or corporation, as a condition for continuing or obtaining such employment, shall be required not to become or continue a member of any labor organization, or shall be required to become or continue a member of any labor organization. The term 'labor organization' means any organization of any kind, or any agency or employee representation committee or plan, in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work."

From the allegations of the complaint, we are unable to ascertain any fact which distinguishes the case at bar from the White Cross Drug case.[2] If the cases are to be differentiated it is by the manner in which the facts are presented in the case at bar and the conclusions in which they are encompassed.[3] Factually, however,

[2]This court upon its own initiative has given serious consideration to certain allegations of the complaint which it was at first felt might have been intended to allege that the picketing here involved was not peaceful, but was, on the contrary, accompanied by acts of force and violence. It is alleged,

"That on or about the 29th day of November, 1949, the defendants entered into a combination, confederation and conspiracy for the unlawful purpose * * * of preventing said plaintiffs and each of them from exercising a lawful business, trade and calling by force, intimidation and threats and by interfering with the property of said plaintiffs and each of them ; * * * that said representatives or pickets at all times intercept, interfere with, molest, intimidate and frighten the plaintiff employees, plaintiff, Harold J. Jensen, and the customers of plaintiff Harold J. Jensen's business. That on several occasions the presence of said pickets have resulted in breaches of the peace."

Upon sustaining the demurrer to the amended complaint, the action was dismissed by the trial court without leave to amend. It was, at first, felt by the members of this court that had the plaintiffs intended by the quoted allegations to assert that the picketing was accompanied by acts of force and violence, an opportunity to amend should have been afforded in order that such acts might have been particularized or at least alleged with greater certainty.

The allegations, however, appear equally consistent with an assertion of criminal conspiracy under sec. 10061 as with an assertion of force and violence. The trial court in its decision treated the case as one of peaceful picketing. Its decision indicates that no contention to the contrary was made by appellants. No request for leave to amend appears in the record. Failure to grant leave was not specifically assigned as error. The picketing is not treated by appellants in either opening or reply briefs as accompanied by acts of force and violence. We thus feel impelled to the conclusion that the case is one of peaceful picketing and that, in any event, any error which the trial court may have committed in so regarding it may not here be considered.

[3]As an example it is alleged that respondents' actions constituted criminal conspiracy to subject control of the establishment to respondents ; to prevent appellants from exercising a lawful business, trade or calling ; to commit injury to trade and commerce ; to compel appellant Jensen to break his contracts of employment with his employees and unlawfully to deny to them free right of selection of collective bargaining representatives.

the cases do not appear to be distinguishable. If the picketing and boycotting are here, for any reason or upon any legal basis, to be regarded as unlawful, it must necessarily follow that the picketing and boycotting in the White Cross Drug case for the same reason and upon the same basis were likewise unlawful, and that this court was in error in holding otherwise. The question, therefore, is not whether an earlier authority may be distinguished, but whether that holding should now be reconsidered.

Appellants first contend that the White Cross Drug case is not here controlling in that the opinion there concerned itself exclusively with sec. 10473, N. C. L. 1929. It is conceded by appellants on the authority of that case that peaceful picketing of the sort here involved is not rendered unlawful by that section. It is contended, however, that under secs. 2825.31 and 2825.32, N. C. L. 1929 Supp. 1931–1941, dealing with the right freely to select representatives for collective bargaining, and sec. 10061, N. C. L. 1929, dealing with criminal conspiracy, the picketing and boycotting in the case at bar are for an unlawful objective. The allegations of the complaint, as indicated earlier in this opinion, are couched in language clearly tying the activities of respondents and their purpose to these sections.

It is true that the two White Cross Drug opinions (on appeal and on petition for rehearing) dealt with sec. 10473 to an extent greatly overshadowing discussion of other statutory provisions. Such extensive discussion was justified in view of the fact that that section was the one most apparently in point. Full discussion was essential to an interpretation of that section if it was to be held that picketing for a closed shop was not· thereby rendered unlawful.

This is not to say, however, that in rendering its opinions this court did not have in mind the sections now urged upon us. Those sections were also cited to this court in the White Cross Drug case. They were the subject of argument by counsel. They were mentioned

in the first opinion of this court upon that case, both majority and dissenting. The pertinent portion of sec. 2825.31 was quoted at length in a footnote to the dissenting opinion. The majority opinion, in referring to these sections, stated that neither of them could be relied upon to restrain peaceful picketing of the type there in question. The majority of the court had in mind these sections as well as sec. 10473 when it stated in its opinion:

"The picket line established by the union in this case was both peaceful and lawful."

It was held in Seibert v. United States ex rel. Harshman, 129 U.S. 192, 9 S.Ct. 271, 32 L.Ed. 645, where counsel sought to have the court reconsider its rulings and overrule a decision in a controlling case, that argument, however elaborate and forceful, which only presents over again reasons originally urged against that decision, does not justify the court in reconsidering its position and changing its conclusion.

Appellants contend, however, that the language used by this court in the White Cross Drug opinion relative to the sections here involved, is such that this court is not precluded from reconsidering the matter in the light of those statutes. That language was as follows:

"Sec. 2825.32 assuring the right to representation in collective bargaining negotiations, and section 10061 of the N. C. L. dealing with criminal conspiracy, were cited to this court by respondents as making the acts of relators unlawful, but neither of these laws were strenuously urged in brief or oral argument. Neither of these laws can be relied upon to restrain peaceful picketing of the type here in question, and if they were to be so construed, such application would be an unconstitutional deprivation of the rights of speech and assembly."

The lack of strenuous argument to which reference is made is not, in our view, sufficient to warrant reconsideration. That the lawfulness of the union activities and objectives under the sections in question was fully

considered by the court is conclusively demonstrated by the dissenting opinion in its opening statement and footnote. (See: Matthews v. Clark as quoted infra.) There Mr. Justice BADT stated:

"I dissent. In my opinion the picketing was properly enjoined because its admitted objective was to compel a violation of the statutes of this state."

quoting at length the pertinent portion of sec. 2825.31, as well as sec. 10473. Mr. Justice BADT clearly intended to and did dissent not only upon the majority's construction of sec. 10473, but upon its construction of sec. 2825.31 as well.

In Michael v. Morey, 26 Md. 239, 90 Am. Dec. 106, the court states:

"Although this point may not have been as fully argued in the former case as in the present, yet it cannot be said that the decision just cited was obiter dictum, as the question was directly involved in the issues of law raised by the demurrer to the bill, and the mind of the court was directly drawn to and distinctly expressed upon the subject."

Appellants next contend that reconsideration of our position in the White Cross Drug case is compelled by three decisions of the Supreme Court of the United States handed down since our opinion on petition for rehearing was rendered. These opinions are Hughes v. Superior Court of California, 339 U.S. 460, 70 S.Ct. 718, 94 L.Ed. 985; International Brotherhood v. Hanke, 339 U.S. 470, 70 S.Ct. 773, 94 L.Ed. 985; Building Service Employees International Union v. Gazzam, 339 U.S. 532, 70 S.Ct. 784, 94 L.Ed. 1045.

The Hughes case sustained the California Supreme Court in upholding an injunction against picketing, the purpose of which was to secure proportional employment of negroes and whites. The Hanke case sustained the Washington Supreme Court in upholding an injunction against picketing, the purpose of which was to compel the owner of an establishment operated with-

out employees to adopt a union shop. The Gazzam case sustained the Washington Supreme Court in upholding an injunction against picketing, the purpose of which was to compel an employer to sign a contract requiring his employees to join a union, thus coercing their choice of collective bargaining representatives.

In no one of these cases, however, did the United States Supreme Court itself approve the injunction or label the picketing as unlawful or for an unlawful objective. The court in each instance accepted the determination of the state through its legislature and courts that such picketing was wrongful and held that in view of the policy of the state thus established the injunction was not an unconstitutional invasion of the right of free speech. The court uniformly recognizes the right of states to determine for themselves their policies in such matters. As stated in the Hughes case:

"The policy of a state may rely for the common good on the free play of conflicting interests and leave conduct unregulated. Contrariwise, a state may deem it wiser policy to regulate. * * * The form the regulation should take and its scope are surely matters of policy and, as such, within a state's choice." [339 U.S. 460, 70 S.Ct. 723.]

And in the Hanke case:

"We are, needless to say, fully aware of the contentious nature of these views. It is not our business even remotely to hint at agreement or disagreement with what has commended itself to the State of Washington, or even to intimate that all the relevant considerations are exposed in the conclusions reached by the Washington court. They seldom are in this field, so deceptive and opaque are the elements of these problems. That is precisely what is meant by recognizing that they are within the domain of a state's public policy." [339 U.S. 470, 70 S.Ct. 777.]

The Gazzam case upon the facts is extremely close to the case at bar. The picketing there was for the same

purpose as the picketing with which we are here concerned. The Washington statute involved, which outlined that state's policy, is in phraseology similar to our sec. 2825.31. The supreme court, however, expressly refrained from passing judgment upon the construction of the Washington statute by the Washington Supreme Court or upon the conclusion of that court that such picketing was in violation of state policy. The United States Supreme Court confined itself to holding that the state court had power thus to determine state policy. The opinion states:

"The meaning and effect of this declaration of policy is found in its application by the highest court of the state to the concrete facts of the instant case. * * * To judge the wisdom of such policy is not for us; ours is but to determine whether a restraint of picketing in reliance on the policy is an unwarranted encroachment upon rights protected from state abridgment by the Fourteenth Amendment." [339 U.S. 532, 70 S.Ct. 787.]

The White Cross Drug case is not, then, in conflict with the United States Supreme Court's holding in the Gazzam case. The situation is simply that the policy of the State of Nevada as defined by this court in its interpretation of our statutes is opposed to that of the State of Washington. However, it remains the function of the state through its legislature and courts to determine that policy. Once determined, unless itself unconstitutional, the United States Supreme Court has indicated that it will not question it. This conclusion is supported by language in the Hanke case referring to Senn v. Tile Layers Protective Union, 301 U. S. 468, 57 S.Ct. 857, 81 L.Ed. 1229. Both the Senn and Hanke cases dealt with injunctions against picketing of self-employers to secure unionization. The Washington court in the Hanke case sustained the injunction. The Wisconsin court in the Senn case denied relief. The United States Supreme Court in each instance upheld the state court. In the Hanke case, referring to this situation, it is stated:

"Whether to prefer the union or a self-employer in such a situation, or to seek partial recognition of both interests, and, if so, by what means to secure such accommodation, obviously presents to a state serious problems. There are no sure answers, and the best available solution is likely to be experimental and tentative, and always subject to the control of the popular will. That the solution of these perplexities is a challenge to wisdom and not a command of the Constitution is the significance of Senn v. Tile Layers Protective Union, 301 U.S. 468, 57 S.Ct. 857, 81 L.Ed 1229. Senn, a self-employed tile layer who occasionally hired other tile layers to assist him, was picketed when he refused to yield to the union demand that he no longer work himself at his trade. The Wisconsin court found the situation to be within the state's anti-injunction statute and denied relief. In rejecting the claim that the restriction upon Senn's freedom was a denial of his liberty under the Fourteenth Amendment, this court held that it lay in the domain of policy for Wisconsin to permit the picketing: 'Whether it was wise for the state to permit the unions to do so is a question of its public policy— not our concern.' 301 U.S. at 481, 57 S.Ct. at 863.

"This conclusion was based on the court's recognition that it was Wisconsin, not the Fourteenth Amendment, which put such picketing as a 'means of publicity on a par with advertisements in the press.' 301 U.S. at 479, 57 S.Ct. at 862. If Wisconsin could permit such picketing as a matter of policy it must have been equally free as a matter of policy to choose not to permit it and therefore not to 'put this means of publicity on a par with advertisements in the press.' If Wisconsin could have deemed it wise to withdraw from the union the permission which this court found outside the ban of the Fourteenth Amendment, such action by Washington cannot be inside that ban."

Thus it is our view that reconsideration of the White Cross Drug case is not compelled by later decisions of

the United States Supreme Court and cannot be justified upon the ground that full consideration was not given by this court to the statutes now presented for interpretation.

The final question is whether reconsideration nevertheless should be given to avoid possible perpetuation of error in the light of the dissents in our own opinions and of the highly pertinent decisions of the Washington Supreme Court in the Gazzam case, 29 Wash.2d 488, 188 P.2d 97, 11 A.L.R.2d 1330, 34 Wash.2d 38, 207 P.2d 699, and in Ostroff v. Laundry & Dye Work's Drivers Local No. 566, Wash., 225 P.2d 419.

In reaching for a just determination of this question we are confronted with the general principles of stare decisis. It is stated (with ample citation of authority) in 14 Am.Jur. 284, Courts sec. 61,

"While, perhaps, it is more important as to far-reaching juridical principles that the court should be right than merely in harmony with previous decisions, in the light of higher civilization, later and more careful examination of authorities, wider and more thorough discussion and more mature reflection upon the policy of the law, it nevertheless is vital that there be stability in the courts in adhering to decisions deliberately made after ample consideration. Parties should not be encouraged to seek re-examination of determined principles and to speculate on a fluctuation of the law with every change in the expounders of it. As to many matters of frequent occurrence, the establishment of some certain guide is of more significance than the precise form of the rule, and substantial justice may often be better promoted by adhering to an erroneous decision than by overthrowing a rule once established."

In re Burtt's Estate, 353 Pa. 217, 44 A.2d 670, 677, 162 A.L.R. 1053, 1062, it is stated "Otherwise the law would become the mere football of the successively changing personnel of the court, and 'the knowne certaintie of the law,' which Lord Coke so wisely said 'is the safetie of all,' would be utterly destroyed."

We must, then, balance against each other, as applicable to the case before us, the evils of perpetuation of error (assuming a reconsideration of the White Cross Drug case should disclose error to exist) and the evils inherent in an abandonment of precedent.

If error was committed by this court it was through statutory construction and, based upon such construction, through determination of state policy relative to peaceful picketing for a closed shop contract. In such respects as these courts have indicated that reconsideration may, with propriety, be regarded as a legislative rather than a judicial function. As to statutory construction Ex Parte Speer, 53 Ida. 293, 23 P.2d 239, 241, 88 A.L.R. 1086, has indicated that judicial reconsideration would be an unconstitutional usurpation of the legislative function; that a court's reversal of its holding on statutory interpretation is no longer mere interpretation but an actual changing of the law. After quoting the provisions of the Idaho constitution relative to division of governmental powers it is stated:

"It is the duty of the Legislature to make the laws, and, in enacting section 18–102, it functioned within the scope of that duty. It was the duty of the court to interpret that statute, and it did so in the Lockman Case. If the law, so interpreted, is to be changed, that is a legislative, not a judicial, function."

Relative to determination of matters of state policy Mr. Justice Frankfurter in the Hanke opinion states:

"Because there is lack of agreement as to the relevant factors and divergent interpretations of their meaning, as well as differences in assessing what is the short and what is the long view, the clash of fact and opinion should be resolved by the democratic process and not by the judicial sword." [339 U.S. 470, 70 S.Ct. 777.]

In the White Cross Drug case this view was clearly presented by this court. In effect we there gave solemn assurance that if any departure was to be made from

the policy there enunciated it must be by legislative act and would not come through judicial reconsideration. In that opinion it was stated:

"If the opponents of union security agreements wish to have them declared unlawful they should address their demands to the legislature for a clear and unmistakable mandate and not appeal to this court for such declaration under color of a law that was never intended to fulfill that purpose." [66 Nev. 182, 207 P.2d 997.] This was reiterated in the opinion upon petition for rehearing, the statement being quoted in full.

Here again we take notice that legislative action has, in fact, been taken: that at the 1951 session of our legislature sec. 10473 was amended (see Footnote 1 supra). As indicated earlier that amendment will demand a redetermination of policy in the light of such legislation should a case involving such policy arise in the future. We are not, therefore, so much concerned here with the danger of prospective perpetuation of possible error as with the need for retrospective correction of possible error. The potential evils in this regard are accordingly lessened.

On the other hand, it is matter of common knowledge that since rendition of the White Cross Drug case there has been widespread reliance by organized labor on the policy there enunciated respecting peaceful picketing and we must assume that employers as well have been guided thereby in their dealings with their employees. That the extent and manner of labor's reliance may have been unwise, injurious and provocative of public ill will does not in any wise relieve this court of its responsibility.

The United States Supreme Court in Minnesota Mining Company v. National Mining Company, 3 Wall. 332, 18 L.Ed. 42, dealing with a request for reconsideration of an opinion relating to law of real property, stated:

"Legislatures may alter or change their laws, without injury, as they affect the future only, but where courts

vacillate and overrule their own decisions on the construction of statutes affecting the title to real property, their decisions are retrospective and may affect titles purchased on the faith of their stability. Doubtful questions on subjects of this nature, when once decided, should be considered no longer doubtful or subject to change. Parties should not be encouraged to speculate on a change of the law when the administrators of it are changed."

The force as stare decisis of opinions by a divided court is discussed in Matthews v. Clark, 105 S.C. 13, 89 S.E. 471, 472, where it is stated:

"It is well to clear up a misapprehension in the minds of the bar as to the force of a decision of the court in cases in which the court is divided. A dissenting opinion shows that the case has been thoroughly considered. The opinions of the majority govern. When that question arises in future cases, the dissenting justice is as much bound by the decision of the majority as is the justice who wrote the prevailing opinion. The dissenting opinion, within the jurisdiction of the court, strengthens the authority of the case. Outside of the jurisdiction of the court, where the decision is not binding but merely evidence as to what the law is, of course the conflict of the witnesses weakens the force of the opinion."

To the same effect is Newton v. Mann, 111 Colo. 76, 137 P.2d 776, 147 A.L.R. 767.

While we are not here concerned with property or contract rights, nevertheless we are concerned with rules of conduct. To repudiate reliance upon our decision under the circumstances facing us and retroactively to expose those who have placed faith in the stability of our holding to claims of tort and perhaps, in the case of employers, to ex post facto criminal liability would be to proclaim our decisions not reliable and to invite a

general lack of faith and confidence in our system of justice. Under the circumstances, these considerations overwhelm any fear we may hold of earlier error or its consequences. The balance falls in favor of stare decisis. The decision in the White Cross Drug case will not here be reconsidered and remains controlling in this matter.

The action of the trial court is affirmed, with costs.

EATHER, J., concurs.

BADT, C. J. (Concurring) :

I concur. Although I dissented from the original opinion and decision and from the opinion and decision denying rehearing in the White Cross Drug case, the law as there enunciated by the majority of the court has since been and is the law of this state. I must so consider it under the doctrine of stare decisis so ably reviewed by Mr. Justice MERRILL.