SELF *v.* WISENER.

5-851                                         287 S. W. 2d 890

Opinion delivered March 12, 1956.

*Bailey, Warren & Bullion,* for appellant.

No brief, for appellee.

GEORGE ROSE SMITH, J. This is a suit by the appellee to enjoin picketing by Local No. 700, International Brotherhood of Electrical Workers. The complaint alleges that the union has picketed Wisener for the unlawful purpose of forcing him to compel his employees to join the union. Ark. Const., Amendment 34; Ark. Stats. 1947, § § 81-201—81-205. The union denies this charge and asserts that the picketing is for the single purpose of protesting the fact that Wisener pays substandard wages to his employees. The chancellor found the issues in favor of the plaintiff and permanently enjoined the union from picketing the plaintiff in any manner whatever.

There is little conflict in the testimony. Wisener had been a member of the union for eight years when he went in business for himself in 1949. For the next two years Wisener continued his membership and conducted his shop under a union contract. In 1951 a dispute arose between Wisener and the local, the details of which are unimportant in this case, and the contract was terminated. When this suit was filed in 1954 Wisener had three employees, none of whom had ever been a member of the union.

The prevailing union wage for electricians in Fort Smith is $2.625 an hour. Wisener pays one of his men $2.00 an hour and the other two $1.50 an hour. In addition he gives them a bonus at the end of each year, this bonus having amounted in 1953 to less than five cents an hour. Wisener also provides certain medical and hospital benefits. Although the value of these benefits is not shown, it is clear that Wisener's wage scale is substantially below the established union rate.

Before the present controversy arose the union's representative, T. F. Self, had requested several business concerns not to employ Wisener for their electri-

cal work. Self testified that he told these concerns that he would appreciate their "using our members and our people and particularly the people that paid the recognized wage rate — fair wage rates." In most instances the firms complied with Self's request and discontinued Wisener's employment. Such a protest was ineffective, however, with reference to work upon a building that was being constructed in Fort Smith, and the union picketed the job.

The picketing was entirely peaceful. There is no suggestion that it was accompanied by threats, intimidation, violence, or other unlawful conduct. Hence the trial court's decree can be sustained only if the picketing was for an illegal purpose. Although the appellee has not filed a brief in this court, there appear to be two possible arguments against the legality of the appellants' conduct.

First, the complaint alleges, and the chancellor found, that the purpose of the picketing was to force Wisener's men to join the union. The weight of the evidence does not support this charge. There is no testimony having a direct tendency to establish the allegations of the complaint. Wisener merely testifies that, since the pickets' signs charged unfairness to the union, he supposed that the union wanted his employees to become members. Wisener does not base his supposition on anything except the bare fact that a picket line existed. He and his three employees all state that there was never any request that the men join the union. The defense testimony is to the same effect. Unless the union's illegal purpose can somehow be deduced from the naked fact of picketing, there is no proof affirmatively establishing the allegations of the complaint.

On the other hand, there is positive proof supporting the appellants' contention that the picketing was a protest against the payment of low wages. Self testified that when he first came to Fort Smith the wage scale was 87.5 cents an hour. Over a period of years the pay has risen to its present level of $2.625. It cannot be doubted that the efforts of organized labor have been

partly responsible for the increase or that the union members have a direct interest in maintaining the wage level. It is shown that from time to time the United States Department of Labor ascertains the prevailing wage scale in every area. Federal construction contracts require that this prevailing wage be paid by the contractor, and a similar provision is sometimes inserted in private building contracts. Wisener admits that his wage payments are reported to the Department of Labor; presumably they are considered in the determination of the prevailing wage for the locality. Thus every electrical worker has a pecuniary interest in the matter. This is the situation in which the appellants elected to call the public's attention to the appellee's wage scale. When the appellants' affirmative proof is contrasted with the appellee's failure to produce affirmative proof it cannot be said that the asserted violation of the state constitution and statutes has been established by a preponderance of the evidence.

Second, it might be argued that picketing as a protest against the payment of substandard wages is illegal in Arkansas. We do not regard such an argument as sound. The legislature has not attempted to forbid such picketing. In the absence of statute the judiciary may announce the state's public policy in accordance with the common law, *Sheet Metal Workers Int. Ass'n* v. *E. W. Daniels etc. Co.*, 223 Ark. 48, 264 S. W. 2d 597, but we are aware of no common law principle that condemns picketing of the kind involved in this case. The fact that no labor dispute existed between Wisener and his employees does not in itself render the picketing unlawful. *Local No. 802* v. *Asimos*, 216 Ark. 694, 227 S. W. 2d 154. When it is realized that the appellants were financially affected by the comparatively low wages being paid by Wisener, there is no valid reason for branding as unlawful the appellants' desire to publicize their grievance.

Reversed.