324 P.2d 1002

INTERNATIONAL BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, LOCAL NO. 857, et al., Appellants,

v.

TODD L. STORMS CONSTRUCTION CO., a corporation, Appellee.

No. 6325.

Supreme Court of Arizona.

April 30, 1958.

Ira Schneier, Tucson, for appellants. Minne & Sorenson and A. D. Ward, Phoenix, of counsel.

Boyle, Bilby, Thompson & Shoenhair, and H. C. Warnock, Tucson, for appellee.

JOHNSON, Justice.

This is an appeal from an order for a temporary injunction. Appellants, the unions and their agents, will hereinafter be referred to as defendants or unions, and the appellee will be referred to as plaintiff or employer, whichever is appropriate.

On February 10, 1956, plaintiff filed its complaint and on the same day an ex parte order was entered restraining defendants from picketing plaintiff's construction project in Douglas, Arizona. The trial court entered an order to show cause why a temporary injunction should not be entered. Defendants filed motions to dismiss the complaint and to dissolve the temporary restraining order. A hearing was had and thereafter the order involved herein was entered.

The complaint alleged a conspiracy to force plaintiff, by picketing his building project, to make an agreement to employ only members of the union defendants; or to coerce or compel the employees of plaintiff and its subcontractors to become mem-

122

bers of the union defendants; or to coerce plaintiff's subcontractors to refuse to carry out their contracts with plaintiff; and such acts were illegal and entitled plaintiff to injunctive relief under Chapter 8, A.R.S. § 23–1301 et seq. The complaint further alleged there was no dispute as to wages and working conditions between plaintiff and its employees, between itself and the employees of its subcontractors, or between its subcontractors and their employees.

In defendants' motion to dissolve the temporary restraining order it was alleged that such order was in violation of their constitutional rights of freedom of speech and assemblage as guaranteed by the Constitution of the State of Arizona and of the United States; that the picketing was solely to publicize the facts relative to the wage scales and working conditions prevailing in plaintiff's business operations and its economic interdependence within the building industry in the State of Arizona; and, that the picketing was at all times peaceable.

Plaintiff presented its case, and the trial court relied thereon in entering the order for a temporary injunction, on the basis that the picketing violated § 23–1322 A.R.S. Plaintiff's counsel stated to the trial court:

"* * * The statute clearly says it shall be illegal to picket an establishment where less than a majority of the employees are engaged in a labor dispute, and that such picketing may be enjoined. That is the issue of this law suit. * * *"

Since the entry of the order we recently held this section unconstitutional as abridging the right of freedom of speech insured under the Fourteenth Amendment of the Constitution of the United States. Baldwin v. Arizona Flame Restaurant, 82 Ariz. 385, 313 P.2d 759.

Also, since the entry of the order for a temporary injunction, the Supreme Court of the United States again considered the limits imposed by the Fourteenth Amendment on the power of a state to enjoin picketing. International Brotherhood of Teamsters, etc., v. Vogt, 354 U.S. 284, 77 S.Ct. 1166, 1 L.Ed.2d 1347. The court reviewed a series of cases which established a broad field in which a state, in enforcing some public policy, whether of its criminal or its civil law, and whether announced by its legislature or its courts, could constitutionally enjoin peaceful picketing aimed at preventing effectuation of that policy.

In Hughes v. Superior Court of State of California, etc., 339 U.S. 460, 70 S.Ct. 718, 94 L.Ed. 985, the Supreme Court held that the Fourteenth Amendment did not bar use of the injunction to prohibit picketing of a place of business solely to secure compliance with a demand that its employees be hired in percentage to the racial origin of its customers.

In International Brotherhood v. Hanke, 339 U.S. 470, 70 S.Ct. 773, 94 L.Ed. 995, 13 A.L.R.2d 631, the court held that a state was not restrained by the Fourteenth Amendment from enjoining picketing of a business conducted by the owner himself without employees, in order to secure compliance with a demand to become a union shop.

Building Service Employees International Union v. Gazzam, 339 U.S. 532, 70 S.Ct. 784, 94 L.Ed. 1045, was decided the same day as the Hanke case. Following an unsuccessful attempt at unionization of a small hotel and the refusal by the owner to sign a contract with the union as bargaining agent, the union began to picket the hotel with signs stating that the owner was unfair to organized labor. The court found the object of the picketing was in violation of its statutory policy against employer coercion of employees' choice of bargaining representative and enjoined picketing for such purpose. The Supreme Court affirmed and rejected the argument that A. F. of L. v. Swing, 312 U.S. 321, 61 S.Ct. 568, 85 L. Ed. 855, was controlling. In the Swing case the Supreme Court struck down the state's restraint of picketing based solely on the absence of an employer-employee relationship.

The problem involved in Local Union No. 10, A. F. L. v. Graham, 345 U.S. 192, 73 S.Ct. 585, 97 L.Ed. 946, is closely analogous to the instant case as it involved the State of Virginia's right to work law, but there the court found there was evidence in the record supporting a conclusion that a substantial purpose of the picketing was to put pressure on the general contractor to eliminate nonunion men from the job.

The decision of this court in the Arizona Flame Restaurant case is in complete accord with the foregoing decisions and with the recent Vogt case. There we held the testimony of the union secretary, to the effect that he intended to continue the picket line until a satisfactory settlement of the reinstatement matter was achieved, violated the declared policy of the right to work statute; hence, the injunctional prohibition against picketing was supported by evidence of the unlawful purpose.

The declared policy of Arizona has been expressed by the legislature, the people by referendum, and by this court. Chapter 8, A.R.S. § 23–1301 et seq.; Baldwin v. Arizona Flame Restaurant, supra. Section 23–1302, A.R.S., of the right to work statute, provides:

"No person shall be denied the opportunity to obtain or retain employment because of nonmembership in a labor organization, nor shall the state or any subdivision thereof, or any corporation, individual, or association of any kind enter into an agreement, written or oral, which excludes a person from employment or continuation of

124

employment because of nonmembership in a labor organization."

■ In considering picketing and the right of freedom of speech it is necessary that the right be evaluated in relation to the rights of the employer, the employees, and the rights of the picketing organization. It is also necessary that it be evaluated in relation to the declared policy of the state. In Bakery and Pastry Drivers, etc. v. Wohl, 315 U.S. 769, 62 S.Ct. 816, 819, 86 L.Ed. 1178, the court stated:

"A state is not required to tolerate in all places * * * even peaceful picketing by an individual. * * *"

In the same case, in a concurring opinion, Mr. Justice Douglas said:

"Picketing by an organized group is more than free speech, since it involves patrol of a particular locality and since the very presence of a picket line may induce action of one kind or another, quite irrespective of the nature of the ideas which are being disseminated. Hence those aspects of picketing make it the subject of restrictive regulation."

■ Applying the pronouncement of the late Justice LaPrade, speaking for the majority of the court, in the Arizona Flame Restaurant case, that peaceful picketing for an unlawful purpose within the meaning of our right to work statute can be enjoined, presents for our consideration whether the evidence establishes that the picketing was for an unlawful purpose.

An examination of the record clearly shows no dispute existed between the employer and its employees, or between the subcontractors and their employees. None of plaintiff's employees were members of union defendants, and none had been requested to become members. The unions and their pickets were strangers to plaintiff and its employees. Neither had the unions or their agents prior to the picketing demanded that plaintiff require its employees to become members of union defendants. The unions, prior to the picketing, limited their requests for a meeting to discuss the economic effect of plaintiff's rate of wages and working conditions upon the prevailing wages and working conditions then prevailing in the building industry in Arizona as a result of the time, effort and money expended by the union over a long period of years.

About three weeks prior to the picketing union officials met with Mr. Todd L. Storms, president of plaintiff company, and his brother Orville Storms, in plaintiff's construction yard at Huachuca Vista, Arizona. Mr. Todd L. Storms advised the union representatives that they had discussed the matter before at various times as far as the union was concerned, and they were not interested at all. However, a meeting was arranged for the following Tuesday in Tucson, Arizona. Mr. Todd L. Storms,

in a telephone conversation with a union representative on Monday, advised him he would not attend the meeting the next day as it was a waste of time. Mr. Todd L. Storms also testified as follows:

"* * * we never had any—at any time we have never discussed wages, hours, working conditions. I don't believe there was anything ever said other than a discussion of having a meeting. As far as any discussion regarding hours, wages or working conditions, they were never discussed in my estimation."

After the refusal by the employer to confer, the unions peacefully picketed plaintiff's construction project and the pickets displayed signs stating plaintiff was unfair in that it did not pay the prevailing wage scale; one day the sign stated plaintiff was unfair to the carpenters' union; another day the sign stated plaintiff was unfair to the laborers' union. The signs were alternately displayed on various days. We recognize that the obvious result of picketing is the refusal of other union employees to cross the picket line and thereby curtail the delivery of material and supplies to plaintiff's building project. The economic effect of picketing is a matter of general knowledge. But the effect is the same whether the peaceful picketing is for a lawful or an unlawful object. Hence, proof alone of the economic effect of pick-

eting on the employer is not sufficient as a matter of law to establish an unlawful object or purpose which the state can prohibit.

To justify the union in picketing an establishment wherein there are no union employees and the employer and employees have no dispute, it is necessary that the union and its members have some interests adversely affected by the conduct of the employer which constitutes the purpose of the picketing. Strangers must have some justifiable interest to protect before picketing can be said to be for a lawful purpose.

There was some evidence that the payment of substandard wages by the plaintiff had an adverse effect upon the wages and working conditions then prevailing generally in the building industry in Arizona, which necessarily would operate to the detriment of union membership. There was no evidence to the contrary except the employer's evidence to the effect that fringe benefits paid by the employer offset the lower wages. The case was presented by the plaintiff and decided by the court upon the theory that the preliminary injunction was justified only under the provisions of § 23-1322, supra.

We do not have before us for decision the problem which would have been created by a finding and decision of the trial court based on conflicting evidence as to the ad-

verse effect the employer's wage scale and working conditions had upon the union. Our decision herein should not be construed as determining that in all situations picketing by strangers for the purpose of requiring the payment of union wages is necessarily for a lawful purpose. Each case must be determined on its own facts.

Order reversed.

UDALL, C. J., and WINDES and STRUCKMEYER, JJ., concur.

PHELPS, Justice.

I concur.

I am, of course, of the view that this court erred in holding § 23-1322, A.R.S. unconstitutional in Baldwin . v. Arizona Flame Restaurant, supra. But I am bound by that decision, and inasmuch as the trial court based its decision in this case exclusively upon that section of the statute I am compelled to concur in this opinion. However, I do not yield my conviction that strangers to a business concern do not have the right to picket such business unless they are able to show that they have an interest therein affected adversely by the conduct of the employer, which interest also adversely affects the public or a considerable segment thereof, which when evaluated outweighs the interest of the employer. Had the trial court decided this case upon the latter ground, I would unhesitatingly dissent upon the record before us.