THEODORE B. ST. JOHN, dba TED'S PLUMBING, Appellant, v. BUILDING TRADES COUNCIL OF RENO and Vicinity and PLUMBERS AND STEAMFITTERS UNION, LOCAL NO. 350, and ADAM ALGER, Respondents.

No. 4266

June 2, 1960                    352 P.2d 820

(Petition for rehearing denied June 28, 1960.)

*Ernest S. Brown, Ray S. Flanary,* and *Jack I. McAuliffe,* of Reno, for Appellant.

*Harry A. Busscher and Roger Bissett,* of Reno, and *Brundage, Neyhart, Grodin and Miller,* of San Francisco, for Respondents.

## OPINION

By the Court, BADT, J.:

St. John, who was engaged in the contracting and subcontracting of plumbing work in Washoe County had bid upon two jobs with T & T Engineering Company to do the plumbing work on the construction of two service station buildings. His bids were the low bids on these jobs. He had undertaken the plumbing subcontracts for T & T for a number of years in the past. He did his own work and employed no help. T & T would have accepted St. John's bid and would have employed him on these two jobs, but for the fact that the building trades council and the local union had put St. John on their "We do not patronize" list. The reason for such action was St. John's refusal to confine the hours of his work to a 40-hour week. St. John sued for damages for a common-law tort, asserting that by reason of the loss of these two contracts he had suffered special damages in the amount of $1,500, and further general damages. From a judgment in favor of defendants, St. John has appealed.

The question presented for our determination is whether the coercive action of the defendants in putting the plaintiff on their "We do not patronize" list was for a lawful objective. We have concluded that it was and that the judgment must accordingly be affirmed.

Appellant concedes that the circulating of a "We do not patronize" list is not an improper means of coercive action.

The district court filed a written opinion and decision which contained its own findings and conclusions and, without making formal findings, directed that judgment be entered in accordance therewith.

The trial court found that there were no threats against either St. John or T & T Engineering Company, that there was no unlawful coercion, no unlawful intimidation, and that the allegations of the complaint as to these factual issues had not been substantiated. The court concluded that the circulation of the "We do not patronize" list as a means of coercion was not unlawful in itself, nor was its purpose unlawful in attempting to require plaintiff to accede to a 40-hour labor week with no weekend activity, as such "attempted regulation bears a reasonable relevance to labor conditions * * * and directed towards something which is reasonably related to employment and working conditions."

This is amply supported by the record. The business agent testified: "[I]n our craft, the plumbing industry, out of the 35 contractors in Reno and Sparks, more than half are self-employed, because in our books, when a man goes to work with his tools, he's working, he's self-employed. We have so many plumbing contractors in this area that are in about the same category as Mr. St. John. They work with tools, and, on occasion, when there is more work than they can handle, they employ men, and they have agreed to observe the 40 hours which is so important to the working man, that he has strived for centuries to obtain, and especially in our community the 40-hour week is essential, in the building construction industry. * * * If [violation of the eight-hour day] is permitted, we would lose the eight-hour day. It would impair our ability to enforce a collective bargaining agreement. Other contractors could not compete against a utility contractor that did not observe the eight-hour day."

Appellant has made his position clear by the use of the following language:

"The conflict involved here, however, was not the conflict between employer and employee. Rather, in essence, it was a conflict between laborers. Requiring appellant to work only forty hours a week could not possibly advance the welfare of the Union. The Trial Court suggests that the Union was protecting its hard-earned

working conditions. But the problem seems to be deeper. How did the Union protect itself? By approaching appellant as an employer? No. It was done by demanding only that appellant work no more than forty hours a week, which, in effect, is a demand that appellant as a laborer, not as an employer, comply with the Union standards.

"If this is true, which appellant contends, then this problem cannot be solved by the use of the privilege to inflict injury because such privilege is accorded only in a conflict with an employer. This is coercion applied by laborers to another laborer. This is an interference with the right of appellant to labor and is not and cannot be justified on the basis of the competition which occurs between labor and management."

The foregoing contention is amplified throughout many pages of the opening and reply briefs and was orally argued with great earnestness. Such contention, however, has been repeatedly rejected by the United States Supreme Court. Senn v. Tile Layers Protective Union, 301 U.S. 468, 57 S.Ct. 857, 81 L.Ed. 1229; Cafeteria Employees Union v. Angelos, 320 U.S. 293, 64 S.Ct. 126, 88 L.Ed. 58; Bakery Drivers Local v. Wohl, 315 U.S. 769, 62 S.Ct. 816, 86 L.Ed. 1178. These and many other cases were cited and discussed at length in the prevailing and dissenting opinions both on the original hearing and on the motion for rehearing in State ex rel. Culinary Workers v. Eighth Judicial District Court (known as the White Cross Drug case), 66 Nev. 166, 207 P.2d 990, 210 P.2d 454. That case concerned itself entirely with Nevada's right to work law (sec. 10473 NCL 1929; now NRS 613.130), as did Jensen v. Reno Central Trades and Labor Council (known as the Lake Street Pharmacy case), 68 Nev. 269, 229 P.2d 908, decided under that same statute and under issues arising prior to the amendment of March 14, 1951 (Nev. Stats. 1951, 111), now NRS 613.130, and prior to the effective date of the initiative act passed at the general election of Nov. 4, 1952 (Stats. 1953, 1), now NRS 613.230–613.300.

Many state cases are in accord. In Colorado peaceful picketing to persuade a contractor to adopt prevailing

wage rates was permitted. Pueblo Building and Construction Trades Council v. Harper Construction Company, 134 Colo. 469, 307 P.2d 468. In Arkansas an injunction against picketing was denied where the cause of the coercion was that the employer employed nonunion electricians at wages below the prevailing union wage. Self v. Wisener, 226 Ark. 58, 287 S.W.2d 890. (Incidentally it was claimed there, as here, that the coercion was for the purpose of enforcing employees to join the union.) In Arizona it was held that the picketing was not unlawful where the employer refused to discuss the situation with reference to the economic effect of the wage rate and conditions of employment prevailing on the employer's job contrary to those prevailing in the state building industry. International Brotherhood of Carpenters and Joiners v. Todd L. Storms Const. Co., 84 Ariz. 120, 324 P.2d 1002. It should be noted that Arkansas and Arizona have right to work laws, and Colorado has a restrictive statute. Appellant distinguishes these cases because in them the coercive pressure was directed against the respective employers. Under the federal cases discussed, we do not recognize this as a distinction. In Jensen v. Reno Central Trades and Labor Council, supra, Justice Merrill, speaking for this court, said [68 Nev. 269, 229 P.2d 912]: "Both the Senn and Hanke cases dealt with injunctions against picketing *of self-employers* * * *." (Italics supplied.) The same is also true in Cafeteria Employees Union v. Angelos, supra.

Appellant contends that this case is controlled by International Brotherhood of Teamsters, Etc. Union v. Hanke, 339 U.S. 470, 70 S.Ct. 773, 94 L.Ed. 995, in which the Supreme Court of the United States sustained an injunction against picketing a used-car sales business conducted by the owner himself without employees. The purpose of the picketing was to compel observance of a restricted work day and work week and a restriction against weekend sales to conform with union rules and standards. The Supreme Court of the United States bowed to the judgment of the Washington courts in striking a balance not inconsistent with rooted traditions of a free people, and refused to say that in making

its choice it offended the Constitution. In such action the supreme court considered that Washington had concluded that it was more important to safeguard the value which the state placed upon self-employers. The supreme court said: "The relatively small interest of the unions considerably influenced the balance that was struck. Of 115 used car dealers in Seattle maintaining union standards, all but ten were self-employers with no employees. 'From this fact,' so we are informed by the Supreme Court of Washington, 'the conclusion seems irresistible that the union's interest in the welfare of a mere handful of members (of whose working conditions no complaint at all is made) is far outweighed by the interests of individual proprietors and the people of the community as a whole, to the end that little businessmen and property owners shall be free from dictation as to business policy by an outside group having but a relatively small and indirect interest in such policy.' 33 Wash.2d at 659, 207 P.2d at 213." The court found nothing inconsistent in such holding with the holdings in the A. F. of L. v. Swing, 312 U.S. 321, 61 S.Ct. 568, 85 L.Ed. 855; Bakery Drivers Local v. Wohl; or Cafeteria Employees Union v. Angelos, both cited supra. Nor does the Hanke case justify any divergence on our part from recognition of the holdings in those cases.

Appellant also relies upon Building Service Employees International Union v. Gazzam, 339 U.S. 532, 70 S.Ct. 784, 789, 94 L.Ed. 1045, decided on the same day as the Hanke case. There the United States Supreme Court affirmed Washington's injunction against peaceful picketing to compel an employer to sign a contract with a labor union which would have coerced his employees' choice of bargaining representative. It held that the public policy of Washington was that workers should be free to join or not to join a union and that they should be free from the coercion or restraint of employers of labor in the designation of their representatives for collective bargaining, and that coercion by picketing was an attempt to induce a transgression of this policy. The court said that it was not for it to judge the wisdom of that policy. "The injunction granted was tailored to prevent a specific violation of an important state law."

Appellant argues that such is the case here; that the union's insistence that St. John conform to union hours could well be extended to an insistence that he conform to union requirements as to payment of time and a half or payment of double time for overtime work, provisions for allowance of meal time, requirement for permission of a shop steward or business agent to work overtime, payment of travel expenses and subsistence under certain conditions, contributions to a welfare fund, payment of double time for certain kinds of work, allowance of pick-up time for gathering of tools and equipment, and similar requirements. If such were true, it would in essence amount to coercion to compel St. John in effect to become a member of the union, contrary to the provisions of Nevada's right to work law. While such argument is not without its appeal, this case comes to us on its own limited facts, supported by evidence as aforesaid, and for its own limited objective of the coercion practiced. Regulation of hours and wages is basic with all unions. Regulations with respect to other matters vary in different localities and with different unions within the same localities, and many of them have no relation to and are without effect on the general economy and welfare. For the union to insist that St. John conform to the 40-hour week is a far different thing from insisting that he join the union, or from insisting that he comply with union regulations other than hours and wages. Self v. Wisner, 226 Ark. 58, 287 S.W.2d 890. We are therefore compelled to reject this argument.

This court in Jensen v. Reno Central Trades and Labor Council, 68 Nev. 269, 229 P.2d 908, succinctly evaluated the extent of the holdings in the Hanke and Gazzam cases largely along the lines discussed above. See also International Brotherhood, Etc. v. Vogt, Inc., 354 U.S. 284, 77 S.Ct. 1166, 1 L.Ed.2d 1347; United Association of Journeymen Plumbers & Steamfitters v. Graham, 345 U.S. 192, 73 S.Ct. 585, 97 L.Ed. 946.

Unless and until the legislature of this state should see fit to enlarge or extend the proscriptions of its present right to work law so as to make unlawful such union

activity as that here engaged in, which is now lawful, the same may not be enjoined by the courts of this state. Judgment affirmed.

MCNAMEE, C. J., and PIKE, J., concur.