### JOHNSON BROS. FURNITURE CO., Plaintiff, v. RETAIL CLERKS' INTERNATIONAL ASSOCIATION, LOCAL 633 OF TOLEDO, OHIO, et al., Defendants.

Common Pleas Court, Lucas County.

No. 175243. Decided September 20, 1951.

Harry S. Bugbee, Toledo, for plaintiff.
Isadore Kohler, Toledo, for defendants.

### OPINION

By STRAUB, J.

This matter came on to be heard by the court on motions

filed by the two defendant labor locals, Local No. 22, Distribution and Warehouse Workers, and Local 633, the Retail Clerks' International Association, to vacate the temporary injunction issued by this court on September 20, 1951.

At the hearing of the motion to vacate, there appears to be no controverted or disputed facts involved, from the evidence which was taken and upon the representations made by counsel for all parties. The facts which are material and pertinent to a determination by this court of this matter are as follows:

That plaintiff is a retail furniture store operating at 223 Summit Street, Toledo, Ohio, with a warehouse in the basement of said building, with an entrance thereto on Water street in the rear of the building.

That the plaintiff has four employees working in the warehouse department, and has four employees working as retail clerks in the retail sales store. None of the plaintiff's employees in the warehouse are members of Local 22. In the retail sales division, one employee, Henry J. Sawicki, is a member of Local 633, and the other three employees are not members of that local.

That prior to August 13, 1951, members or representatives of Local 22 had solicited the employees of the plaintiff in the warehouse division to join and become members of Local 22, but all of such employees had declined to so join.

That prior to August 13, 1951, members or representatives of Local 633 had solicited the three employees of the plaintiff who are not members of that local, in the retail sales division, to join and become members of Local 633, but that all three of said employees in the retail sales division had declined to so join.

That on August 13, 1951, at or about 3:30 p. m., a representative of Local 22 and a representative of Local 633, acting in behalf of their locals, entered the plaintiff's store, and each presented to C. Rowland Johnson, president and treasurer of the plaintiff company, copies of a form of agreement of their respective locals, and requested the said C. Rowland Johnson to sign said agreements.

That the agreement presented by the representative of Local 22 provided, in Article I of said form of agreement, as follows:

"ARTICLE I

"Section 1. The Employer recognizes the Union to be the sole and exclusive bargaining agent, in respect to wages, hours and conditions of work and employment, of all employees in the Toledo Warehouse of the Employer who are members of or eligible to membership in the Union, excepting and excluding supervisory employees, office employees, and salesmen.

"Section 2. The Employer may hire new employees for a probationary period of thirty (30) days and if an employee is retained he must become and remain a member of the Union for the duration of this Agreement. The Union shall be the sole judge of a member's standing. The provisions of this section shall be operative for a period of one (1) year from the date hereof, and shall be further operative for the duration of this Agreement unless otherwise prohibited by law.

"Section 3. The Company agrees to check-off dues, initiation fees and assessments of regular and part-time employees.

"The company shall remit not later than the fifteenth (15) day of each month, all monies due the Union."

That the agreement presented by the representative of Local 633 provided, in Article II of said form of agreement, as follows:

"All employees employed by the employer who are actively engaged in the selling of merchandise at Employer's store at ——— Summit Street, Toledo, Ohio, except executives of the Co. (including the Manager and Assistant Manager) and excepting employees who spend more than three-fourths of their time with the Company in employment other than selling merchandise, shall be covered by this agreement. In the interest of harmony and efficient operation, it shall be the policy of the company that as a condition of employment all those employees who are now members, or may become members of the Union, shall continue to pay their dues and remain in good standing during the life of this Agreement. New employees shall be given 30 days to become members in good standing."

That the representatives of the two defendant labor locals remained with Mr. C. Rowland Johnson for a period of only several minutes.

That Mr. C. Rowland Johnson declined and refused to sign each of the forms of agreement presented to him by each of the representatives of the two locals.

That at or about 5:00 p. m. of that same day, or within several hours of the time the representatives of the locals presented the forms of contract to C. Rowland Johnson, that pickets representing the two labor locals appeared at the front Summit street entrance of the sales store, and at the rear Water street entrance of the warehouse of plaintiff, and that picketing by the said locals began at that time and continued until restrained by the order of this court on September 20, 1951.

That following the presentation of the forms of contract by the representatives of the labor locals to Mr. C. Rowland Johnson, there were no further conversations, negotiations, or meet-

ing held between representatives of the labor locals and the plaintiff or its agents.

As previously stated, the foregoing facts are the only facts pertinent and necessary in this controversy for a determination by the court of this case. At the hearings on the motion to vacate the temporary injunction, the court received the benefit of very masterful and scholarly presentations of the law on the questions of the rights of the parties, from counsel for all parties.

It is the contention of counsel for plaintiff that under the facts in this case, the plaintiff was entitled to a temporary injunction restraining the defendant locals from picketing their place of business on two grounds; first, that no legitimate labor dispute was involved between the plaintiff and its employees. Second, that the picketing of the defendant locals was for an unlawful purpose, namely, to compel the plaintiff company to coerce its employees in the warehouse and retail sales divisions to become members of the defendant locals representing their particular nature of employment.

To support this contention, counsel for plaintiff relies, among many others, upon the authority of **Crosby v. Rath, 136 Oh St 352, 16 O. O. 496,** decided by the Supreme Court of the State of Ohio in the year 1940.

It was the contention of the attorneys for the defendant locals that their defendant labor locals have the right to peacefully picket the plaintiff's store with the purpose of influencing the general public and advertising the fact that the plaintiff had in its employ, employees who were not members of the unions.

To support their contention, counsel for the labor locals rely upon the authority, among many others, of the case of A. F. of L. v. Swing, 312 U. S. 321, decided by the Supreme Court of the United States in February of 1941.

There can be but one logical and reasonable conclusion drawn from the undisputed facts in this case, namely, that the foremost and primary purpose of the picketing by the defendant labor locals, of the plaintiff's store and warehouse, was to have plaintiff sign the form of agreement presented by each defendant local, which would designate each defendant local the sole and exclusive bargaining agent in respect to all matters of work and employment of all employees of the plaintiff in plaintiff's warehouse and retail sales division; and that under such form of agreement, all employees of plaintiff in its retail sales division and warehouse, if they wish to continue in the employ of plaintiff, must become members of either one of the two labor locals.

The facts in this case are parallel and identical with the facts in the case of Crosby v. Rath; and since that case is the latest pronouncement on this matter by the Supreme Court of the State of Ohio, this court holds that the case of Crosby v. Rath is the law of the State of Ohio, which authority holds that it is illegal and, therefore, a labor local does not have the right to engage in picketing when the object of such picketing is to force the employer to coerce the employes to become members of a labor local.

It is the contention of the defendant locals that the case of A. F. of L. v. Swing, decided by the Supreme Court of the United States in 1941, expressly overrules the Crosby case decided by the Supreme Court of Ohio in 1940; and counsel for defendant locals present decisions by several Ohio common pleas and appellate courts to substantiate their position. However, with this contention, this court cannot concur, and it is the interpretation of this court that A. F. of L. v. Swing did not overrule or nullify the case of Crosby v. Rath.

It is to be noted that the Supreme Court of the United States, at the exact time that it considered the Swing case, also had before it on a writ of certiorari the question of admitting the Crosby case to the Supreme Court docket for consideration; that on the same date, February 10, 1941, at which time the Supreme Court of the United States rendered its decision in the Swing case, on that same date the Supreme Court of the United States denied certiorari in the case of Crosby v. Rath. It is to be further noted that a second writ of certiorari was filed in the case of Crosby v. Rath in the Supreme Court of the United States, and that on May 25, 1942, some fifteen months after the decision in the Swing case, the Supreme Court of the United States again denied certiorari in the case of Crosby v. Rath.

Considering these developments, it cannot be logically contended that the Swing case overruled or nullified the Ohio case of Crosby v. Rath. And, there can be noted a distinct variance in the facts of the two cases, upon which variance of facts the Supreme Court of the United States, by its denial of certiorari on two separate and distinct occasions in the Crosby case, established the law that the Crosby case is in no way affected by the decision in the Swing case. The distinguishing fact between the two cases is that in the Swing case there is no question of picketing for an illegal purpose. In the Crosby case, as in the case before us for consideration, the purpose and object of the picketing is manifestly illegal in that it attempts to force an employer to compel his employees to join a labor local after such employees have voluntarily declined to do so.

Since the decision in the Crosby v. Rath case by the Supreme Court of Ohio, several Ohio courts have interpreted the Crosby case to decide the proposition that even where the purpose of picketing is lawful, that such peaceful and lawful picketing would be restrained if there was no legitimate labor dispute involved between the employer and his employees. Certainly the syllabus and some of the dicta in the Crosby case can be interpreted to comply with some of those decisions. However, this court, in the determination of this matter, is not called upon to consider Crosby v. Rath, as an authority for the proposition that a labor local has no right to picket, even peacefully, where there exists no dispute between the employer and his employes. A case is determined by a court upon the facts in that case, and many times a decision based upon certain facts is quoted as the legal proposition to determine some other case involving distinguishable facts. Unquestionably, the Supreme Court of Ohio, in deciding the Crosby case, was influenced by the violence, coercion, and disorder engaged in by the pickets in the Crosby case, although it is to be noted that in the court's opinion no reference is made in any way to this matter. It was this element of violence by the picketers, plus the unlawful objective of the picketing, which brought about the decision in the Crosby case, and unquestionably which caused the Supreme Court of the United States to deny certiorari of that case on two occasions.

As stated before, this court does not have the question to determine as to whether it is unlawful in the State of Ohio for a labor local to picket merely and solely because there is no labor dispute between the employer and its employees. Considering the element of violence and the unlawful objective of the picketing in the Crosby case, this court would be most reluctant to interpret the Crosby case to the extent that peaceful picketing by a labor local is lawful only when there exists a labor dispute between an employer and his employees. However, where the picketing, even though peacefully conducted, is carried on by a labor local for the express purpose of forcing the employer to compel his employees to become members of a union against their will, it is the decision of this court that the case of Crosby v. Rath is the authority on that subject in the State of Ohio.

Counsel for plaintiff also referred, among other authorities, to the case of **Union v. Gazzam**, 339 U. S. 532, 42 **O. O. 76**, decided by the Supreme Court of the United States in May of 1950, to substantiate their contention in this matter. Counsel for defendants have attempted to distinguish the Gazzam case

from the case before us, in that there was an express legislative enactment in the State of Washington in the Gazzam case which made it illegal for a labor local to picket the employer and compel him to force his employes to become members of the union. Counsel for defendants say that the Gazzam case was decided by the Supreme Court of the United States on the grounds that the legislative enactment in the State of Washington thereby established the public policy of the State of Washington on that question, and that the Supreme Court of the United States would not disturb or interfere with the public policy of a state after such public policy had been established.

In answer to this, it should be noted that in the decision of the United States Supreme Court in the Gazzam case, the opinion having been written by Mr. Justice Minton, that in 339 U. S., at page 537, 42 **O. O.** at **page 78,** in the opinion of Justice Minton, the Gazzam case states as follows:

"The public policy of any state is to be found in its constitution, acts of the legislature, and decision of its courts."

From these express words in the opinion of the Gazzam case, the position of the Supreme Court of the United States in denying certiorari on two occasions in the Crosby case is very consistent; and the Supreme Court of the United States has recognized that the public policy for the State of Ohio with reference to a labor local picketing an employer to coerce his employees to become members of the union is an illegal and unlawful purpose.

It is the thought of this court in this opinion that the paramount rights involved in this case are not the rights of the employer or the rights of the union. It is the thought of this court that the paramount rights involved in this controversy before it are the rights of the seven or eight employees of the plaintiff who have declined to become members of either one of the defendant locals, and who have, as indicated in Plaintiff's Exhibit 4 introduced in evidence on this motion, signed their names under the following written declaration:

"We, the undersigned employed by The Johnson Bros. Furn. Co., 224 Summit St., Toledo, Ohio, not being a member of the Union and do not wish to become affiliated with the Unions —."

Under the Constitution of the United States and the Constitution of the State of Ohio, individuals are endowed with certain rights, and certainly any coercion of any individual in this court or this state to compel such an individual to become a member of any organization is unconstitutional and, therefore, illegal.

We quote from **24 O. Jur., 632,** under the topic of "Labor,"

Section B, subhead "Labor Unions," paragraph 20 on page 632, under the topic "Membership."

"MEMBERSHIP IN A LABOR UNION IS VOLUNTARY.

"Every workingman has a right to belong to a labor organization if he chooses. He has an EQUAL right to refuse to belong and the denial of either right, whether by the labor or a capitalistic organization is a species of despotism."

Further on this point, the court quotes Section 7 and parts of Section 8 of the National Labor Relations Act adopted by the Congress of the United States on June 23, 1947:

"Section 7. Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in Section 8 (a) (3)."

"Section 8 (a) (1). It shall be an unfair labor practice for an employer to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in Section 7; * * *"

"Section 8 (b) (1). It shall be an unfair labor practice for a labor organization or its agents to restrain or coerce (A) employees in the exercise of the rights guaranteed in Section 7; * * *"

While the Crosby case, decided in 1940, establishes not only the public policy but the law of the State of Ohio on the matter before us, there is little question in this court's mind that if the matter was again to be determined by the Supreme Court of Ohio since the enactment of the National Labor Relations Act, the decision would be the same.

It is to be further noted that the illegal purpose involved in the picketing in this matter becomes very obvious when, under the provisions of Section 8-a-1 of the National Labor Relations Act, the employer, if he acceded to the demands of the labor local and signed the form of contract presented to him, thereby forcing all of his employees to become members of the union, that he would become guilty of an unfair labor practice as an employer.

The motion of each defendant, Local 22 and Local 633, to vacate the temporary injunction issued by this court on September 20, 1951, is hereby overruled, and each defendant's exceptions hereby saved.