## Kitson et al. v. Waiters and Waitresses Union et al.

*Herbert I. Rothenberg*, for plaintiffs.

*L. H. Wilderman* and *R. H. Markowitz*, for defendants.

KUN, P. J., December 12, 1951.—Pursuant to the order of November 5, 1951, of your honorable court in the above case (in the Supreme Court as of January term, 1951, no. 255) to consider appellants' petition for dissolution of the injunction which we granted, because of the averment that appellees had sold their business, and to make our recommendation thereon with the return of the record, the following action was taken:

On November 13, 1951, on presentation of defendants' motion to dissolve, we granted a rule on plaintiffs to show cause why the final decree entered by us on June 28, 1951, should not be dissolved, directing that copies of the motion and rule be served on the purchasers of the business from plaintiffs, and on any employes of plaintiffs who are still employed at the same place of business. This rule was made returnable November 26, 1951. An answer to the motion and rule was filed by the new owners of the business, averring that 16 persons previously employed by original plaintiffs and protected by our final decree, are still employed at the same place of business. Thereafter, petitions to intervene were filed by the present owners of the business and by the 16 employes who were employed by plaintiffs, whose rights were involved in the litigation, and continued in such employment by the purchasers and present owners of the business. The rules on both these petitions were made returnable on December 3, 1951, to which date the rule on defendants' motion to dissolve was advanced. Argument on the motion to dissolve and petitions to intervene was heard on that date, and briefs were submitted contra defendants' motion to dissolve and in support of the petitions to intervene. Leave was given to defendants to file their briefs within a week.

It is a sufficient answer to defendants' motion to dissolve the injunction to point to the decree itself, which prohibits defendants from "(2) . . . directly or indirectly picketing, boycotting or advising, instructing or engaging others to picket or boycott the complainants, *their employees*, their customers or the *business premises* of the complainants . . .", and "(3) . . . from threatening, molesting or abusing, insulting, assaulting or advising, instructing or encouraging others to threaten, molest, abuse, insult or assault, the complainants, *their employees* or any other person. . . ." (Italics supplied.)

It will be observed that the decree runs in favor of the employes as well as their former employers. Indeed, the employes were in a sense, and still are, the real parties in interest, because it was the unlawful conduct of defendants and their efforts to coerce the employes to form a branch of defendant union, which the employes resisted, which gave rise to the entire controversy, resulting in unlawful and coercive acts directed against original plaintiffs, the employers, calculated to compel them to coerce their employes to join the union. Defendants had no controversy or basis for controversy with the employers themselves. The bill filed was based largely on alleged violations by defendants of the Pennsylvania Labor Relations Act of 1937, as amended. The employes could have intervened in the original proceedings as parties-plaintiff, but seeing that their employers were conducting litigation on their behalf, there was no need for them to do so. Had they sought to intervene as parties-plaintiff, leave to do so could not have been denied.

In Erdman v. Mitchell, 207 Pa. 79, it was the employes who filed the bill, and intimidation and coercion of them *and their employers* was enjoined. In the case before us it was the employers who filed the bill and we

entered a decree protecting them *and their employes.*
The court acted in the cited case on basic, equitable
principles long before any Federal or State statutes
on the subject. Many cases have followed that decision.
Reference is made to this case also to emphasize the
point that the public policy of a State is not fixed alone
by the legislature. As stated in Building Service Union
v. Gazzam, 339 U. S. 532, 537: "The public policy of
any state is to be found in its constitution, acts of the
legislature, and decisions of its courts." It may be
said in passing that in that case it was decided that
even so-called "peaceful" picketing can be enjoined
when the evident purpose of it is to compel an employer
to coerce employes to join a union, there being a State
law (Washington) prohibiting such interference and
coercion by employers, similar to the Pennsylvania
Amended Labor Anti-Injunction Act of June 9, 1939,
P. L. 302. In that case the only picketing involved was
the carrying of a sign by one man, "Unfair to Organ-
ized Labor", and it was intermittent and peaceful—
innocuous enough in form and manner. Nevertheless,
picketing was enjoined because of its unlawful pur-
pose, evident from the fact that the union had at-
tempted to coerce the employer to, in turn, coerce his
employes to join the union. This is precisely what
happened in the case before us, excepting that in addi-
tion to the evident unlawful purpose of the picketing,
there was active fraud, violence and chicanery on the
part of defendants, in their endeavor to unionize the
employes against their will. The action of the court
did not depend on the statute itself, but was just as
much based on many decisions of the courts which have
helped to formulate the public policy of the State on
the subject matter. All that the statute did was to
impose some regulatory provisions which, as enacted

in 1937, were found to be so extreme, restrictive and unjust that they were modified by the amendment of 1939 referred to.

Findings of fact and conclusions of law were made by the court in respect to the rights of the employes, just as they were in respect to the rights of plaintiffs, which were the basis for giving the employes the protection of the decree. In a case like this there is a community of interests between the employer and employes to be free from coercion to deal with a union, whether such freedom is vouchsafed by statute or by decisions of courts. The contention of defendants that because the proceedings were not instituted by the State Labor Relations Board, different rules of law or equity must be applied, is without merit. General equity jurisdiction in such cases is not restricted by the Labor Relations Act: Wildbank et ux. v. Chester & Delaware Counties Bartenders', Hotel and Restaurant Employees Union et al., 360 Pa. 48. Certainly so far as the employes are concerned, the decree is not moot. It is very much alive and very much required to protect them against the invasion of their right to work under such terms and conditions as they see fit, without the intimidation, coercion and molestation they were subjected to, as found by the court. We believe the employes have a clear right to intervene to protect their rights under the decree.

There appears to be some question of the right of plaintiffs' successors to intervene, but there is authority to support the right, considering the quasi-public character of the litigation. We do not think their intervention would introduce "new issues" in the case, as argued by defendants, and the authorities cited by them on that point have no bearing on the case. No new issues are sought to be put into the case. The purpose is simply to maintain the status quo fixed by

the decree. It must be clear that the cases in which the original complainants went out of business and discontinued operations, and the other cases where by contract complainants and defendant union settled their differences during the litigation, can have no bearing on such a case as is before the court. Obviously, in the circumstances mentioned the questions became moot and it was proper to dissolve the injunctions. Here we have a continuing condition of employment of the same employes, in the operation of the same business, who were subjected to the illegal actions of defendants, which the court restrained. The situation is continuously pregnant with the same elements, the ultimate object of which is to unionize the employes involved, and unless the restraint is continued to protect them, there will be a rebirth in all likelihood of the lawlessness which was enjoined. We think it would be somewhat of a reflection on the administration of justice if the employes particularly, who are protected by the decree by direct reference to them, were compelled to litigate the case over again because of the circumstances that their former employers had sold the business to others. We make these observations in passing merely, and make no orders on the petitions to intervene because defendants' counsel have objected that we are limited to the order of remittitur. We agree with this and will confine ourselves to it, although the petitions to intervene might be considered cognate.

On the basis of the foregoing considerations, we recommend that defendants' motion to dissolve the injunction should be refused. The record is herewith returned to the Supreme Court with the addition of defendants' motion to dismiss, the answer thereto, and the two petitions to intervene.