**CORN, Plaintiff, v. CHILDERS et, Defendants.**

Common Pleas Court, Lawrence County.

No. 33658. Decided March 1, 1954.

E. L. Riley, Ironton, for plaintiff.
Richard Eisnaugle, Portsmouth, for defendants.

## OPINION

By EARHART, J.

This case is before the court on application of plaintiff, D. E. Corn, for a temporary injunction restraining the defendants, Helen Childers, Laverne Deering, Jean Gannon, Irene Morgan, Lorraine Christy, Betty McCloud, Amanda Price, Louise Smith, Nell Lyons, Mary Coe and Marie Coe, and Hotel & Restaurant Employees & Bartenders Union, Local No. 865 from picketing his place of business known as the Colonial Inn and located in Ironton, Ohio.

The plaintiff in his petition states that he employs thirty-nine persons including cooks, waitresses, bartenders, janitors, maintenance men, office clerk and cashiers, and says that the defendants since Wednesday, February 17, 1954, have been

engaged in unlawful picketing of the plaintiff's place of business, that they trespass on the plaintiff's property, blocking the driveways from the public street across the sidewalks to the plaintiff's parking lot, that they stop automobiles entering the premises, that they carry signs and banners with false and libelous slogans printed thereon, designed to injure his business.

Plaintiff says that he has received no communication and has no knowledge as to whether a substantial number, or any of his employees, are members of any duly organized and qualified union, and at no time has there been presented to him any notice from the Labor Board or any other board designating authorized bargaining representatives, and, insofar as he knows, there is no union existing among the employees of his business.

Plaintiff says that the defendant, the Hotel and Restaurant Employees & Bartenders Union, Local No. 865, through one, William O. Royalty, International Representative, has caused the other defendants named herein to picket the place of business and interfere with the plaintiff's business for the purpose of forcing the plaintiff to coerce his employees to become members of said union, and to name local 865 as bargaining agent on behalf of plaintiff's employees. Plaintiff says that the conduct of the defendants above described constitutes a nuisance and is of a continuous nature, and is intended to injure the plaintiff's business, and says that he has no plain, adequate and complete remedy at law, and that unless the defendants are restrained from continuing their unlawful acts, plaintiff will suffer irreparable damage.

Plaintiff asks for a temporary restraining order against the picketing and unlawful conduct, and upon a final hearing, that the injunction be made permanent, ordering the defendants to discontinue their interference with the plaintiff's business.

An answer was filed on behalf of the Hotel and Restaurant Employees and Bartenders Union, Local No. 865, in which they admit that the plaintiff, D. E. Corn is the owner and operator of a business described as the Colonial Inn, and in effect, deny all the other allegations of the plaintiff's petition, and ask that the petition of the plaintiff be dismissed.

The plaintiff testified that he is the owner of the Colonial Inn where he employs a staff of thirty-eight or thirty-nine persons which include waitresses, bartenders, cooks and other employees, and that of these thirty-eight or thirty-nine, twenty-two are full time employees, the balance being employed only on a part time basis. The plaintiff testified that

prior to January 28, 1954, none of his employees belonged to a union, and that he was never advised by any of the employees that they were members of any union, or had any grievances concerning their hours of employment, working conditions, or any other dispute over the terms of their employment. He testified that on February 16, he found it necessary to reduce his staff of waitresses by four and asked for volunteers. Upon receiving no volunteers, Corn thereupon laid off defendants Louise Smith, Helen Childers, Laverne Deering and Amanda Price, all of whom were members of Local No. 865. The following day, February 17th, according to Corn's testimony, eleven of the defendants, all members of the union, commenced picketing his place of business.

The plaintiff testified that he sent a notice for these employees to report for work on the following Saturday night which they refused to do and were therefore fired. The remaining seven defendants were also fired when they failed to report for work.

Defendant, Amanda Price, testified that she had reported to Corn that she and some of the other waitresses had grievances, that the salary of $19.00 per week and tips was not sufficient, that they were paying menu prices for their meals, and that they could not pay for their uniforms out of the salary which they received. This defendant claimed that she conferred with Corn for over an hour in his office and received no assurance that these grievances would be adjusted. She claims that she also informed Corn that she had joined the union. Corn denies that any such conversations took place, and denied that he had any knowledge that the defendants had joined the union, or had any grievances until the picketing commenced.

The defendants introduced in evidence two letters received by Corn from the union. The first under date of February 11, 1954, advising him that the union represented a group of employees and requesting a meeting for the purpose of negotiating a contract covering wages, hours and conditions of employment, said meeting to be not later than Wednesday, February 17th, 1954, and requested a reply as to a meeting date. This letter went unanswered and on February 17, a second letter was mailed to plaintiff by the union, stating that since they had received no reply to their first letter, they were intending to take the necessary steps to inform the public that Corn refused to confer with them. These letters were introduced in evidence together with registered return receipts, indicating receipt by Corn of these letters. On February 17th, the defendants commenced their strike of the plaintiff's place of business.

Corn also testified to the effect that the pickets had been disorderly, "unlady like," and that they had prevented food delivers to his establishment, had blocked the driveways to prevent patrons from coming into the Colonial Inn, and had threatened prospective customers. These acts are denied by the defendants and the evidence is conflicting. At any rate, whether these acts were engaged in by the pickets or not, the court set down rules pertaining to future picketing at the place of business.

It is the contention of the plaintiff that the defendants have no right to picket his place of business because no labor dispute exists, that the union representative has not been recognized as the official bargaining agent by the National Labor Relations Board, that before calling the strike at plaintiff's business, a vote was not taken amongst the employees, that only eleven out of thirty-eight have indicated that they desire to join the union, and that since less than 51% belong to the union, the strike is illegal.

The defendants contend that they do not come under the regulation of the National Labor Relations Board since the plaintiff's place of business is not engaged in interstate commerce, that this being true, the courts of Ohio have permitted picketing in cases of this kind, that a labor dispute does exist, and that they have a right under the Constitution of the United States to notify the public that a labor dispute exists between it and the employer by carrying banners and picketing.

There are actually only two questions presented in this case; (1) Does a bona fide labor dispute exist between plaintiff and defendant employees? (2) If a labor dispute does exist, are the pickets engaged in illegal picketing?

It is fundamental that if a labor dispute actually exists, the defendants have the right to picket, so long as they do in a peaceful manner. If no labor dispute exists, then the picketing is unlawful, whether peaceful or otherwise, and will be enjoined.

For this reason then, it must first be determined whether or not a bona fide labor dispute exists.

The right of labor to strike was first recognized in this country by the state of Massachusetts in 1842. Since that time, the rights of labor to strike and picket have received varying and contradictory interpretations by the courts. In 1921 the United States Supreme Court in the case of American Steel Foundries v. Tri-City Council, 257 U. S., p. 184, fully recognized the right to strike as a basic and fundamental right of labor. The U. S. Supreme Court now takes the posi-

tion that members of a union have the right to picket a place of business to make known the facts of a labor dispute because of the provision in the U. S. Constitution guaranteeing the right of freedom of speech, provided that the purpose of the strike is not to coerce other employees to join the union or for other illegal purposes, and provided the picketing is done in a peaceful manner. (See **Building Service Employees International Union v. Gazzam,** 339 U. S. 532, 42 O. O. 76; **International Brotherhood of Teamsters Union, Local 309 v. Hanke,** 339 U. S. 470, 42 O. O. 69. This being the basic doctrine governing the right of labor, we must presume therefore, that a strike is legal until shown to be otherwise. The Ohio courts seem to hold to the principle that there must be a labor dispute existing between the employer and employee before a strike and picketing is lawful.

Having reviewed these basic principles, we can now proceed to examine the facts in this case. It is the claim of the plaintiff that the defendant union has not been duly recognized as a bargaining agent of the National Labor Relations Board, that under the Labor Management Relations Act (commonly known as the Taft-Hartley Act) the defendant union has not carried out the conditions precedent before calling a strike. The union representative admitted in his testimony that the defendant union had not been recognized as a bargaining agent by the N. L. R. B., and that no conditions precedent under the Taft-Hartley Act had been carried out before calling the strike at the Colonial Inn. The union contends however that it is not subject to the Taft-Hartley Act because the employer in this case is not engaged in interstate commerce, and that where the employer is not engaged in interstate commerce, the Taft-Hartley Act has no application.

The plaintiff has the burden of showing that the Colonial Inn is engaged in interstate commerce. No evidence was presented to this effect, therefore the court finds that the Colonial Inn is not engaged in interstate commerce. This being true, the Labor Management Relations Act has no application to this case, and the rights of the parties depends upon the law of Ohio.

Having determined that the Labor Management Relations Act has no application to this case, we must therefore examine the Ohio cases on this question. The Ohio courts have recognized that both employer and employee have certain fundamental rights. The employer has a right to prevent strikers from trespassing on his property, he may enjoin picketing when it is accompanied by force, violence, coercion, threats,

or physical interference with other employees, or with customers, tradesmen, or other persons who desire to come onto the employers premises, or who enter the premises at the request of the employer. If the purpose of the strike and resulting picketing is to coerce the employer to hire union members to the exclusion of others who do not desire union membership, such picketing, whether peaceful or otherwise is illegal. This is clearly the law of Ohio as set forth in the case of **Crosby v. Rath, 136 Oh St 352, 16 O. O. 496.** The United States Supreme Court has also followed this rule.

In this case there is no question of the coercion of other employees to join a union. There is no evidence in the record indicating that any employee was coerced to join the union. The only request made by the union to Corn was that he confer with them relative to a union contract. and the strike was called and picketing commenced because of Corn's refusal to confer with this representative. The plaintiff claims that the purpose of the strike was to force union membership upon his other employees, and if this were true, the strike would be illegal, for a person is just as free not to join a union as he is to join. The defendant waitresses claim that the purpose of the strike was to negotiate with Corn over matters of salary, working conditions, hours of labor, etc. Whether this was the purpose or not, there is certainly no evidence that any employee was coerced to join the union. It is therefore my opinion that the strike and resulting picketing at the Colonial Inn was not illegal in this respect.

I find no reported cases directly in point in this state except Bell v. Rogers, reported in 107 N. E. (2nd) p. 136, where the Common Pleas Court of Summit county held that where an employer refuses to conduct negotiations with a union which represents some of its employees, a labor dispute exists and the members of the union have the right to engage in peaceful picketing.

The evidence in this case indicates that a dispute existed between Corn and some of his employees who were members of this union. Defendant Amanda Price testified that she had asked Corn for an increase in salary, either by way of actual monetary increase or by furnishing the waitresses uniforms, that she be allowed to have her meals while on duty, at less than menu prices and that all of these requests were refused. Defendant Laverne Deering testified that she had requested overtime pay for long hours on New Years Eve which had been refused. Defendant Price also testified that she conferred with Corn for more than an hour on behalf of herself and other of the defendants over certain grievances

they had. These conversations Corn denies, and claims that never at any time did defendants request any change in salary or hours. The court finds from the evidence that these demands were made upon the plaintiff. This being true, can it be said that no labor dispute existed between plaintiff and defendants? There was no evidence that any of the defendant waitresses had made any demand for a "closed shop," asked others to join the union, or attempted any coercion of other employees in any respect. Under the circumstances as shown by the evidence, I find that a labor dispute did exist between the plaintiff and defendants and that since a labor dispute did exist, the defendants had a right to engage in picketing under the laws of this state, subject of course, to the limitation that picketing be done in a legal manner.

In the case of **W. E. Anderson Sons Co. v. Local Union 311, 156 Oh St 541, 46 OO 460,** decided by the Supreme Court of Ohio on February 13, 1952, I find the following at **page 561:**

"Court decisions now seem to firmly establish the rule that picketing or bannering as a means of the exercise of the right of free speech will be afforded constitutional protection so long as it is lawfully conducted, but if it becomes unlawful then it falls within the category of a civil wrong and must be governed by the law of torts. In other words, the constitutional guaranty of the right of free speech is predicated upon the lawful exercise of such right and if, through conspiracy or unlawful conduct the result of its exercise unlawfully injures another in his property rights, the guaranty ceases and the exercise of the claimed right by such means may be enjoined or prohibited."

Another contention of the plaintiff is that only eleven out of thirty-nine employees had joined the union and that the remaining twenty-eight had executed signed statements that they did not desire union membership, that since less than 51% did not indicate a desire for union membership, the strike was illegal. It is true that had Mr. Corn negotiated with the union, and had the union then demanded that others join the union as a condition of further employment that Mr. Corn could reject this demand without subjecting his place of business to a strike, for the law recognizes very definitely the right of an employee to reject union membership, but in this case, no such demand was made because no negotiations were ever conducted. The question of accepting or rejecting union membership was not in issue at this time, the only demand being that plaintiff confer with a union representative. The strike was called because Corn refused to negotiate with the union representative designated by the eleven defendants who had joined the union.

From the authorities I have examined, the presumption is that a strike is legal under the Constitutional provision of freedom of speech, unless the strike is for an illegal purpose, which I do not find present here.

Having decided that the defendants had the right to strike from the evidence presented at the trial, we must now review the evidence as to whether or not the picketing was done in a peaceful manner.

The plaintiff testified that the pickets at the Colonial Inn had been stopping cars by standing in front of them and holding up their signs, that they had turned away twenty or thirty car loads of people who sought to enter the plaintiff's place of business, that they had prevented a driver for Swift and Company from delivering meat to the premises, and claimed also that a beer truck had been turned back. It was further the testimony of the plaintiff that the pickets had behaved in an unlady like manner, had engaged in dancing and boistrous conduct while on the picket line. It is the testimony of the plaintiff that the pickets opened car doors and told the occupants that a strike was on and asked them not to patronize the Colonial Inn, but to go to the Hudson Brothers Post of the American Veterans of Foreign Wars. Similar testimony was given by Mr. Nazal, who appears to be the manager of the establishment, his testimony corroborating most of the testimony of the plaintiff. Defendants Helen Childers, Laverne Deering, and Amanda Price were called and denied that there had been any improper activity, denied that they had stopped the Swift and Company truck or any beer truck or had opened the doors of any cars, and advised patrons not to patronize the establishment of the plaintiff. They specifically denied telling patrons to go to the Hudson Brothers Post, denied any misconduct on the picket line, and a stipulation was entered into between attorneys for the plaintiff and the defendant that if the remaining defendants were called they would testify to the same facts as the three who were called.

Although the evidence is in conflict as to what actually took place on the picket line, the court upon a hearing ordered the pickets to cease and desist the improper picketing, if the same was going on. The court at that time limited the picketing to two pickets, instructed them not to block the means of ingress or egrees of motor vehicles of patrons or trucks seeking to make deliveries and the pickets were further instructed not to coerce, intimidate or block the means of ingress or egress of other employees who desired to work. There have been no complaints since the order of the court relative to picketing

indicating that any of the courts rules as to the picketing at the Colonial Inn have been violated. If there was unlawful picketing at the Colonial Inn, it has now ceased and the picketing is apparently being carried on in accordance with the order of the court heretofore made. The court finds therefore, that the picketing is not now being carried on in an unlawful manner and must assume that the picketing is being carried on pursuant to the order of this court

Labor disputes of this kind are difficult of solution, but must be decided upon the basis of the law of this state as the court finds it to be. Personal sympathies for one side or the other should not properly enter into the court's decision in any case, and the court has made an honest effort to decide this case upon the decisions of the higher courts in this state, and based also upon the many conflicting and some times confusing decisions of the United States Supreme Court. To the best of my ability, I have reached this decision solely upon the basis of the law as I find it to be.

The application of the plaintiff for a temporary injunction is hereby denied. An entry may be prepared accordingly.