AMERICAN HOTEL COMPANY OF MISSOURI, a Corporation, Plaintiff-Appellant,

v.

BARTENDERS' INTERNAT'L LEAGUE OF AMERICA, LOCAL NO. 422, an *unincorporated* association affiliated with the American Federation of Labor, Leonard Toothman, as President and J. D. Goff, as Executive Secretary and Business Representative of said Local No. 422, Raymond Dempsey and Larry Shuck, as members of and as representatives of the membership of said Bartenders' International League of America, Local No. 422, and Warren Welsh, Labor Coordinator of St. Joseph Central Labor Council, Defendants-Respondents.

No. 45553.

Supreme Court of Missouri.

Division No. 1.

Jan. 14, 1957.

Brown, Douglas & Brown, R. L. Douglas, Robert E. Douglas, St. Joseph, for appellant.

No attorney or brief for respondents.

VAN OSDOL, Commissioner.

This is an appeal from an order and judgment denying injunctive relief. Plaintiff had instituted the action to enjoin alleged unlawful picketing. Plaintiff-appellant contends the picketing was unlawful because in violation of Art. I, § 29, Const., V.A. M.S., which Section provides that "employees shall have the right to organize and to bargain collectively through representatives of their own choosing." Defendants-respondents have filed no brief herein.

Plaintiff is a Missouri corporation engaged in operating the Hotel Robidoux of St. Joseph. Defendants include Bartenders' International League of America, Local No. 422, a voluntary unincorporated association affiliated with the American Federation of Labor, the members of which association include employees of bars, taverns and restaurants selling alcoholic liquors and beverages in St. Joseph. Defendants Leonard Toothman and J. D. Goff are respectively the president and executive secretary of Local 422, which defendants, and defendants Raymond Dempsey and Larry Shuck, are members and class representatives of the membership of Local No. 422. And defendant Warren Welsh is Labor Coordinator of the St. Joseph Central Labor Council.

Plaintiff had alleged the picketing was unlawful in its purposes, including the purpose of inducing and coercing the bartenders employed by plaintiff, through fear of loss of employment, to join defendant Local No. 422 and to designate that organization as their bargaining representative; and including the purpose of inducing and coercing plaintiff, through fear of loss of business, to interfere with and obstruct its employees in the exercise of their right of self-organization, their right to form or join a labor organization of their choice, or their right to refrain from joining any labor organization.

It is inferred that interstate commerce was not involved or substantially affected or obstructed by any of the activities involved in this case. As we understand it, we have no question to decide as to whether jurisdiction of this case lies in Federal authority.

Plaintiff's president, who is the general manager of the Hotel Robidoux, testified that defendant executive secretary of Local No. 422 came to the hotel office in early February, 1956. The executive secretary asked if the president would sign "a closed shop agreement covering the bartenders" at the hotel. Plaintiff's president advised

that he didn't have authority personally to sign an agreement, that it would be necessary "to talk to some of our people about it." At the time, there had been a number of newspaper stories about "new construction" at the Robidoux. Defendant executive secretary said he thought "now was the time to hit the hotel because there was an impending construction job coming up." Within two or three days, that is, "around" February 9th, the hotel was patrolled by a picket with sign conveying the message— "Members of Bartenders' Local 422 A.F.L. Are Not Employed In This Hotel." Later, and for a period of a few days, picketing was suspended while there were some conversations between counsel for plaintiff and defendants; however, on February 23d the picketing was resumed. Upon resumption and until the time of the trial of this cause, the picket patrolling the hotel carried a sign bearing the legend—"We urge the bartenders employed by Robidoux Hotel to join us in our efforts to maintain union wages and working conditions. We are making no appeal to anyone but the bartenders working here, Local 422." The hotel was also in receipt of a letter dated February 22d, signed by the executive secretary as business representative of Local No. 422, which letter was in part as follows,

"This labor organization is contemplating the establishment of a picket line at the premises of your company and we desire to advise you of the objects and purposes for which such picketing will be conducted and of our attitude and policy with respect to various corollary matters that may arise in the course thereof.

"According to information available to us, a majority of the bartenders employed by your concern are not members of any labor organization. We are interested in persuading those employees, if possible, and by the use of lawful means only, to apply for membership in our Local Union.

"In this connection with the efforts of our Union to persuade non-union employees to make application for membership, we have found that public opinion plays a very important role. This is to say, if the employees of an employer come to the conclusion that the public (constituting their customers) prefers to patronize them as union members, such employees more readily respond to the request of a Union to become members. Our Union intends to picket the premises operated by your concern in a peaceful and orderly manner, without violence, threat or intimidation, for the purpose of advertising to the public that your said employees are 'non-union.'

"In conducting that publicity program, it is the hope of our organization that the public, once it discovers that the majority of your employees are not members of our Union, will either urge your said employees to become members of our Union or, failing that, will divert its patronage to those firms who do employ Union employees. In this manner, with the approval and assistance of the public, our Union hopes to provide and and assure steady employment for its members working in Union shops. Our Union also hopes that, assuming the public will support our viewpoint by withholding its patronage, your said employees will be persuaded, by the weight and influence of such public opinion only, to the conclusion that affiliation with and membership in our Union is desirable. It is the further hope of our Union that this same public opinion, if given by the public, will incline the management of your Company to the viewpoint that, if lawfully authorized to do so, it will desire to enter into contractual relations with our organization. * * *"

Drivers of the vehicles of suppliers of meats, liquors and beverages generally decided not to cross the picket line. Occasionally these decisions were made after the drivers had communicated with defendant Labor Coordinator. The hotel was obliged to divert the use of its "food" delivery truck to the use of "picking up supplies for the hotel itself." The picketing was peaceful.

This court in considering the proper interpretation of Art. I, § 29, Const., supra (and its application to the facts of the particular case then being reviewed), recognized as lawful the objective of peaceful "organizational" picketing, that is, peaceful picketing with the purpose of advertising the fact that an employer's employees are not members of a union and thereby, through persuasion and through the influence of truthful publicity, cause such employees to become unionized; and which peaceful organizational picketing is lawful and consequently protected by constitutional guaranties of free speech, although such picketing may be said to have the "effect" of interfering with or obstructing and occasioning loss in the employer's business with resultant *tendency* to cause the employer to violate his employees' constitutional right of free and uncoerced choice of bargaining representation. (Except perhaps where to permit such peaceful picketing, under the particular circumstances of a case, would cause such harm to others as to outweigh, as a matter of public policy, the desirability of permitting the peaceful picketing even though to enjoin it denies one of its ingredients—free speech.) But it was further recognized and held by this court that peaceful picketing with the purpose or objective of causing the employer to violate his employees' constitutional right of free and uncoerced choice is unlawful as violative of Art. I, § 29, Const., supra, and may be enjoined without abridging constitutional guaranties of free speech. Bellerive Country Club v. McVey, Mo.Sup., 284 S.W.2d 492; Building Service Employees International Union, Local 262 v. Gazzam, 339 U.S. 532, 70 S.Ct. 784, 94 L. Ed. 1045.

The Supreme Court of the United States has remarked that picketing is in part an exercise of the right of free speech guaranteed by the Federal Constitution. But it was further said that, since picketing is more than free speech and establishes a *locus in quo* that has far more potential for inducing action or nonaction than the message the pickets convey, the Supreme Court of the United States "has not hesitated to uphold a state's restraint of acts and conduct which are an abuse of the right to picket rather than a means of peaceful and truthful publicity." Building Service Employees International Union, Local 262 v. Gazzam, supra, 339 U.S. at pages 536–537, 70 S.Ct. at page 787; Bellerive Country Club v. McVey, supra. It is held in this state that picketing to coerce employees to designate a certain union as a bargaining agent is a violation of Art. I, § 29, Const., supra. Katz Drug Co. v. Kavner, Mo.Sup., 249 S.W.2d 166; Tallman Co. v. Latal, Mo. Sup., 284 S.W.2d 547. The stated Section of our Constitution enunciates the public policy of our State. Compare Building Service Employees International Union, Local 262 v. Gazzam, supra. The right of choice, as guaranteed to employees by the Section, " 'means a free choice, uncoerced by management, union, or any other group or organization, so that picketing with an objective in violation of that guaranty must be regarded as equally unlawful as where coercion to violate a statute is involved, as in the Giboney case [Giboney v. Empire Storage & Ice Co., 336 U.S. 490, 69 S.Ct. 684, 93 L.Ed. 834].' " Tallman Co. v. Latal, supra, 284 S.W.2d at page 552.

■ We accept as true the testimony of the plaintiff's president that the executive secretary of Local No. 422 was soliciting plaintiff's signature to a closed shop agreement. Such agreement, we suppose, contemplates that none but members of a labor union are to be employed, and in this case we infer the executive secretary was seeking a closed shop agreement whereby none but members of the labor union Local No. 422 were to be employed. The executive secretary at the time pointedly suggested that the time was ripe "to hit the hotel," because of the hotel's rebuilding program. Defendants did not introduce evidence in denial of this testimony, nor did defendants introduce evidence tending to explain, qualify or amplify its objectives in picketing the hotel, which pick-

eting was begun two or three days later—on or about February 9th; suspended for a few days, and resumed February 23d. In fact defendants rested at the conclusion of plaintiff's case.

We think the picketing (which it may be assumed defendants knew would in its effect tend to interfere with the hotel's reconstruction program, as well as to obstruct the management, and cause a loss of patronage at the hotel) was manifestly designed to coerce plaintiff's signature to a closed shop agreement with Local No. 422. It is to be plainly inferred that plaintiff's employees were not, or at least a majority of them were not members of Local No. 422, or of any other labor organization. (See the second paragraph of the quotation from the letter of February 22d, supra.) Such an agreement would presuppose that membership in Local No. 422 would be imposed upon those who were or remained in plaintiff's employ. Therefore, we think the conclusion inescapable that the ensuing picketing beginning February 9th was for the purpose or had for its objective the coercion of plaintiff into coercing its employees to become members of Local No. 422.

As stated, the picketing originally instituted February 9th was suspended for a few days and was resumed February 23d by picketing with a sign of different wording. On the eve of the latter date, however, the executive secretary had written the letter of February 22d, parts of which we have quoted supra.

We have carefully studied the language of the letter. We believe the "hopes" expressed by the writer denote or disclose defendants' actual coercive objective in picketing plaintiff's hotel—to cause the hotel's employees to become members of defendant Union—notwithstanding the writer's labored explanations and disclaimers. We have noticed it was the hope of defendants that the public, once discovering that the major-ity of the hotel employees are "not members of our Union, will either urge" the hotel employees "to become members of our Union," or failing that, "will divert its patronage" to those firms who do employ union employees. We also read the language of the letter in the light of the revealing circumstance of the conversations of the secretary treasurer with plaintiff's president prior to the institution of the picketing a few days before. It seems to us from the language of the letter that the "effect" (which picketing, although lawful, incidentally causes) was in this case intentionally designed to implement and coerce the consummation of defendants' real objective. The threats of loss of patronage and of obstruction or delay in plaintiff's reconstruction plans were being intentionally utilized in attempting to coercively accomplish defendants' purpose. We believe it is clear that, in this case, the effect and the objective of the picketing are the same or inseparable; that is, to coerce plaintiff to in turn coerce its employees into joining Local No. 422, and into recognition and acceptance of that union as their bargaining representative in violation of Art. I, § 29, Const., supra.

■ The order and judgment denying injunctive relief should be reversed and the cause should be remanded with directions for the entry of a judgment enjoining picketing which has the objective of causing plaintiff to coerce its employees into joining and recognizing a union as their bargaining representative, all in accordance with the views herein expressed.

It is so ordered.

COIL and HOLMAN, CC., concur.

PER CURIAM.

The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court.

All of the Judges concur.