SWEET *v.* LOCAL 552, BARBERS & BEAUTICIANS
UNION, AFL–CIO.

1. COURTS—PRECEDENTS—CONSTITUTIONAL LAW.

A decision of the Supreme Court of the United States that the statute of a sister State, similar to a statute of this State, is constitutional, is not authority for this State being required to establish and maintain such law.

2. INJUNCTION—BURDEN OF PROOF.

The burden of proof in a suit for injunctive relief is always upon the moving party.

3. SAME—PEACEFUL PICKETING—BARBERS.

Picketing, conducted by defendant union at plaintiffs' places of business for barbering in order to persuade plaintiffs to resume affiliation with defendant union *held*, peaceful in suit to enjoin it.

4. SAME—PEACEFUL PICKETING—DISPLAY OF PLACARDS—FREEDOM OF SPEECH.

The peaceful picketing by members of one union against barber shops whose owners and operators had left such union and joined another union being for a lawful objective and by means of placards which were neither libelous nor untruthful *held*, protected by the constitutional prohibition of abridgment of the freedom of speech (US Const, Am 1; Mich Const 1908, art 2, § 4).

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 14 Am Jur, Courts §§ 115–122.
[2] 28 Am Jur, Injunctions §§ 25, 279.
[3] 31 Am Jur, Labor §§ 442, 449, 514.
[4, 5] 31 Am Jur, Labor §§ 434–436.
Legality of, and injunction against, peaceful picketing to force employees to join union or to compel employer to enter into contract which would in effect compel them to do so, in the absence of a dispute between employer and employees as to terms or conditions of employment.  11 ALR2d 1338.
[6] 11 Am Jur, Constitutional Law § 319.

5. SAME—PEACEFUL PICKETING—BARBERS—STATUTES.

> The peaceful picketing of barber shops whose owners and operators had left defendant union and joined another union was not violative of pertinent statute prohibiting the use of "force or unlawful threats", although designed to exert economic pressure upon plaintiffs to resume affiliation with defendant union, hence, was not subject to injunction (CLS 1956, § 423.17).

6. CONSTITUTIONAL LAW—FREEDOM OF SPEECH.

> The essence of freedom to speak is the freedom to speak while speech may yet be effective.

DETHMERS, C. J., and CARR and KELLY, JJ., dissenting.

Appeal from Wayne; Toms (Robert M.), J. Submitted January 11, 1961. (Docket No. 59, Calendar No. 48,327.) Decided December 1, 1961.

Bill by Russell Sweet, Charles Mitchell, and Charles W. Dobozy against Local 552, Barbers & Beauticians Union, AFL–CIO, and certain of its officers and agents to enjoin picketing of plaintiffs' barber shops. Decree for plaintiffs. Defendants appeal. Reversed.

*Schwartz, O'Hare, Sweeney & Sullivan* (*Rolland R. O'Hare* and *Boaz Siegel*, of counsel), for defendants.

KELLY, J. (*dissenting*). Plaintiffs, owners and operators of 3 barbershops, filed their bill of complaint against defendant union, Local 552, Barbers & Beauticians Union, AFL–CIO, and others, seeking an injunction restraining defendants from picketing plaintiffs' shops. The lower court granted plaintiffs the injunctive relief sought, and defendants appeal.

Plaintiffs were at one time members of defendant union and when they opened their own shops they became affiliated with a guild which was an association of defendant union but limited to employers.

Defendant union adopted a resolution establishing a health and welfare fund and, also, a public relations fund.   These programs were financed as follows: (1) from employers—prescribed deductions from gross income; and (2) from employees—prescribed deductions from earnings.

Plaintiffs, objecting to this plan, refused to renew their contracts with defendant union.   Their union emblems were lifted, and defendants began picketing plaintiffs' shops.   Plaintiffs became affiliated with a different international union, United Mine Workers of America, and have secured a charter from said union as Local 14,173, District 58.

The picketing was peaceful, consisting primarily of placards being carried by the pickets, stating in effect: "This is not an AFL–CIO shop" and "Why get shaved by a miner?   Look for a member of our barbers' union instead."

Plaintiffs have not cut prices, underpaid their employees, nor do they lack the necessary skill of the trade.   The crux of the dispute is simply plaintiffs' refusal to accept a contract by defendant union calling for assessments for the health and welfare fund and the public relations fund.

Defendant union admits that if plaintiffs were to accept its contract the picketing would cease.   This would necessitate plaintiffs' abandonment of their affiliation with the United Mine Workers.

In granting the injunction, the lower court observed that this was not a typical conflict between employees and management involving wages, hours, working conditions, but a dispute between 2 groups in the same industrial field involving the terms of a proposed contract affecting both groups.   The court granted the injunction on the grounds that the picketing was in violation of CLS 1956, § 423.17 (Stat Ann 1960 Rev § 17.454[18]), which forbids force or unlawful threats in an attempt to have a person be-

come or remain a member of a labor organization.

Defendants contend plaintiffs are not entitled to relief since Local 14,173 of the United Mine Workers is a sham and in violation of CLS 1956, §§ 423.2, 423.16 (Stat Ann 1960 Rev §§ 17.454[2], 17.454 [17]), which provide:

"Sec. 2. When used in this act, unless the language or context indicates otherwise:

"(a) The term 'company union' includes any employee association, committee, agency, or representation plan, formed or existing for the purpose, in whole or in part, of dealing with employers concerning grievances or terms and conditions of employment, which in any manner or to any extent, and by any form of participation, interference or assistance, financial or otherwise, either in its organization, operation or administration, is dominated or controlled, sponsored or supervised, maintained, directed, or financed by the employer."

"Sec. 16. It shall be unlawful for an employer or any officer or agent of an employer * * * (2) to initiate, create, dominate, contribute to, or interfere with the formation or administration of, any labor organization; * * * (4) or encourage membership in, or initiate, create, dominate, or contribute to a company union."

The question is whether Local 14,173 of the United Mine Workers is a company union within the meaning and contemplation of the statute. No cases are cited by appellants to support the proposition that it is a company union, nor has our research revealed any similar case. The arrangement in this type of situation is unique. Under defendant union's setup the union is the head, so to speak, even though there is an apparent division of employees (Local 552) and employers (Guild 4). The defendants contend that because the United Mine Workers' Local 14,173 does not have this division, as of yet, it is a company

union or an employer-dominated union since plaintiffs were the organizers and its membership consists both of employers and employees.

We do not question that in the past defendant union has been able to represent both employers and employees in grievances which may have arisen but, nevertheless, a situation does exist where conflicting interests could operate against one of the two and there is no way of knowing if the "employers" would prevail or the "employees." The reliance must, therefore, be placed upon the integrity of the union. Similarly, under Local 14,173, differences could develop between employers and employees which would have to be resolved by the United Mine Workers. Again, reliance must be placed upon the integrity of the union. It cannot be said, therefore, that United Mine Workers, Local 14,173, is a company or employer dominated union within the meaning or contemplation of the statute, any more than defendant union, and, hence, defendants' complaint that plaintiffs do not come into equity with clean hands is without merit.

The United States supreme court has recognized the fact that the right to picket is not absolute. Injunctive relief is available where violence is present (*Hotel & Restaurant Employees' International Alliance, Local No. 122* v. *Wisconsin Employment Relations Board*, 315 US 437 [62 S Ct 706, 86 L ed 946]) and where an unlawful object is sought to be achieved (*Giboney* v. *Empire Storage & Ice Co.*, 336 US 490 [69 S Ct 684, 93 L ed 834]; *Building Service Employees International Union, Local 262* v. *Gazzam*, 339 US 532 [70 S Ct 784, 94 L ed 1045]; *International Brotherhood of Teamsters, Local 695, AFL* v. *Vogt, Inc.*, 354 US 284 [77 S Ct 1166, 1 L ed2d 1347]). In *Gazzam, supra,* in upholding an injunction prohibiting picketing, which sought to have an employer force his employees to join defendant

union contrary to the public policy of the State of Washington, it was stated (pp 536, 537):

"This court has said that picketing is in part an exercise of the right of free speech guaranteed by the Federal Constitution. * * * (Citing cases.) But since picketing is more than speech and establishes a *locus in quo* that has far more potential for inducing action or nonaction than the message the pickets convey, this court has not hesitated to uphold a State's restraint of acts and conduct which are an abuse of the right to·picket rather than a means of peaceful and truthful publicity."

The lower court properly concluded that the injunctive relief should be granted because the picketing was in violation of CLS 1956, § 423.17 (Stat Ann 1960 Rev § 17.454[18]).

The decree should be affirmed. No costs, as plaintiffs filed no briefs.

DETHMERS, C. J., and CARR, J., concurred with KELLY, J.

EDWARDS, J. The plaintiffs in this case are working barbers who own their own shops. They formerly were members of Guild 4 of the Barbers & Beauticians Union, AFL–CIO. They broke with that union over the establishment of a health and welfare fund and a public relations fund which the union sought to finance out of monthly assessments. When plaintiffs refused to renew their contracts, the defendant union took away plaintiffs' union emblems and they joined another union. The circuit judge who heard this suit described the controversy thus:

"It is not the typical conflict between employees and management involving wages, hours, and working conditions, but it is nevertheless a dispute between 2 groups in the same industrial field involving the terms of a proposed contract affecting both

groups. The parties have been unable to agree as to certain terms in that proposed contract, and the plaintiffs have thereupon defected from the union and the associated guild to which they formerly belonged (Local No. 552 and Guild No. 4) and have affiliated with a different international union (United Mine Workers of America) and have secured a charter as Local No. 14,173 therein."

On plaintiffs' refusal to renew their contracts, defendants-appellants instituted picketing. The trial judge described the picketing thus:

"The picketing has been peaceful and most of the time almost desultory. The statements on the banners carried by the pickets are true, although hardly unbiased. They do not say, 'This shop is unfair to organized labor,' or 'This is not a union shop.' They say, in substance, 'This is not an AFL–CIO shop'— which is true—or (paraphrasing slightly), 'Why get shaved by a miner? Look for a member of our barbers' union instead,'—which is argumentative."

Plaintiffs filed suit seeking to restrain all picketing. After a hearing, where evidence was introduced which supported the findings of fact quoted above, the circuit judge enjoined all picketing on the ground of a State statute forbidding "any employee or other person by force, coercion, intimidation or threats to force, or attempt to force any person to become or remain a member of a labor organization," citing CL 1948, § 423.17 (Stat Ann 1947 Cum Supp § 17.454 [18]).

In this regard he relied primarily upon a United States supreme court case, *Building Service Employees International Union, Local 262* v. *Gazzam,* 339 US 532 (70 S Ct 784, 94 L ed 1045), which held somewhat similar language in Washington statute and case law not to be violative of the Federal Constitution. The *Gazzam Case* might well have been authority for the proposition that the Federal Con-

stitution did not render the Michigan statute cited by the circuit judge unconstitutional. It, of course, is not authority for Michigan being required to establish and maintain such law.

Actually, in 1949 the legislature had changed the language of the section on which the circuit judge relied. The language of the statute in force during this dispute was:

"It shall be unlawful (1) for any employee or other person by force or unlawful threats to force, or attempt to force any person to become or remain a member of a labor organization, or (2) for an employee or other person by force or unlawful threats to force or attempt to force any person to refrain from engaging in employment. Violation of this section shall be a misdemeanor and punishable as such." CLS 1956, § 423.17 (Stat Ann 1960 Rev § 17.454[18]).

This change apparently was not called to the circuit judge's attention. We think the change is quite significant. The circuit judge's findings of fact show conclusively that we deal here with entirely peaceful picketing. There isn't the slightest hint in this case of defendants' use of "force or unlawful threats."

The burden of proof in any suit for injunctive relief is always upon the moving party. Here, plaintiffs show a severance of their union membership primarily because of a dispute over the union's health and welfare fund. Plaintiffs show that they secured a charter from another union, and that defendants picketed.

The picketing described in this record is for a lawful objective. It is entirely peaceful. The signs carried are neither libelous nor untruthful. We regard such picketing as protected by the First Amendment to the United States Constitution, and by article 2, § 4, of the Michigan Constitution of 1908. *Town & Country Motors, Inc.,* v. *Local Union No. 328,* 355

Mich 26; *Davidson* v. *Michigan State Carpenters Council,* 356 Mich 557.

There is, of course, no doubt that the picketing employed herein was designed to exert economic pressure upon plaintiffs and, by so doing, to influence them to resume affiliation with defendant union which seeks to establish standards in the barber trade. It is not, however, necessary for one who seeks to speak, and in so doing relies upon the constitutional freedoms, to prove that his speech will be wholly ineffective. *Town & Country Motors, Inc.,* v. *Local Union 328, supra,* 52.

See, also, *Thornhill* v. *Alabama,* 310 US 88 (60 S Ct 736, 84 L ed 1093).

Reversed. Costs to appellants.

BLACK, KAVANAGH, and SOURIS, JJ., concurred with EDWARDS, J.

OTIS M. SMITH, J., took no part in the decision of this case.